This is an appeal from a judgment of the Montgomery County Circuit Court upholding an order of the Alabama State Board of Medical Examiners (hereafter the Board) denying Dr. Benton's request for a full and unrestricted Alabama controlled substance certificate. We reverse and remand with directions.
In 1958, Dr. Benton admitted herself to a hospital, for the ostensible purpose of being treated for a narcotics addiction. That same year, Dr. Benton's controlled substance certificate was restricted by the Board to exclude Class II and Class III controlled substances from her prescription rights. This action was taken without notice or an opportunity to be heard being afforded Dr. Benton.
Dr. Benton took no action to contest the Board's order until 1978. At that time she appeared before the Board for a hearing to determine whether her certificate should continue to be restricted. At that hearing, Dr. Benton was neither represented by counsel nor allowed to present evidence on her behalf.
In 1981, Dr. Benton again requested an unrestricted certificate. It was at this hearing that Dr. Benton first learned of the nature of the charges against her. Additionally, she was provided with a narrative summary of the specific allegations relied upon by the Board for its earlier action. While the Board extended Dr. Benton's prescription rights to include Class III drugs, her Class II prescription rights continued to be restricted.
In 1983, Benton again requested an unrestricted certificate. Again, the Board denied her request. On appeal to the Circuit Court of Montgomery County, that court ruled: "[T]his court cannot find from the record or from the testimony here presented that the order of the Board of Medical *Page 236 
Examiners was arbitrary or unreasonable." Dr. Benton appeals.
At the outset, it is apparent from a reading of the record and oral argument that considerable confusion exists concerning the appropriate standard of review in an appeal from a ruling of the Alabama State Board of Medical Examiners restricting the prescribing rights of licensed physicians. This is due largely to the existence of two seemingly contradictory enactments, the Alabama Uniform Controlled Substances Act, Code 1975, § 20-2-1et seq. and the Alabama Administrative Procedure Act. Code 1975, § 41-22-1 et seq. We take this opportunity to clarify the interrelationship of the two enactments, with particular emphasis on judicial review of the Board's rulings.
The Administrative Procedure Act, enacted in 1981, was intended to provide minimal due process procedural requirements for all state agencies when taking actions affecting the rights and duties of the public. Code 1975, § 41-22-2 (a). Nothing in the act, however, relieves agencies of the duty to comply with additional procedural requirements otherwise established by law. Id.
Code 1975, § 41-22-20, sets out a process by which an aggrieved party may seek judicial review, in circuit court, of an agency's final decision or order. Of particular import in the instant case is subsection (k), which provides in pertinent part:
 "(k) The agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. . . ."
Code 1975, § 41-22-20 (k). In other words, unless otherwise authorized by statute, the final rulings of a state agency must be reviewed with an attendant presumption of correctness.
In this instance, another statute, the Alabama Uniform Controlled Substances Act, takes precedence. It authorizes a trial de novo in an appeal from a final ruling of the Alabama State Board of Medical Examiners. Code 1975, § 20-2-53, reads in pertinent part:
 "Anyone adversely affected by any order of a certifying board denying, suspending, or revoking a registration or refusing the renewal of a registration, whether or not such suspension, revocation, or registration is limited, may obtain a review thereof by filing a written petition for review with the circuit court of Montgomery county within 30 days after the entry of said order. The petition shall contain or have attached thereto a true copy of the order complained of and shall state the grounds upon which the review is asked and shall pray that the order of the board be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the certifying board or at the principal office of the certifying board, and thereupon the certifying board shall certify and file in the court a copy of its order and complete transcript of the record upon which the order complained of was entered. The case shall, however, be tried and heard by the court de novo with any party being permitted to introduce new or additional evidence. The court is specifically authorized to exercise its discretion as to questions of fact as well as law and may affirm, modify or set aside the certifying board's order in whole or in part. . . ." (Emphasis added.)
We find that although this section is somewhat clumsily phrased, the clear intention of the legislature is to provide for a de novo hearing in its truest sense. The language of Code 1975, § 20-2-53, mandates the filing of the record and transcript of the Board's hearing in Montgomery County Circuit Court. However, in stark contrast to the Alabama Administrative Procedure Act, § 20-2-53 specifically authorizes the admission of any new or additional evidence. Furthermore, it stresses that original findings of fact and law are to be made within the trial court's discretion. Lastly, *Page 237 
§ 3 of this act definitely states that the act shall take precedence over the provisions of Code 1975, § 41-22-1 et seq.See Code Commissioner's Note, Code 1975, § 20-2-53.
Katz v. Alabama State Board of Medical Examiners,351 So.2d 890 (Ala. 1977), enunciated the criteria upon which a trial court should reach its de novo determinations in reviewing a medical licensing board ruling such as this one:
 "So there may be no question that denial of reinstatement to the practice of medicine is not grounded upon unreasonable or arbitrary bases, review of that question should be on the state of the evidence, after full due process hearing, regarding: the likelihood of an applicant violating the provisions of § 270, Tit. 46, Code (1940) [now Code 1975, § 34-24-360]; whether the period of time an applicant has not been permitted to practice is sufficient penalty for past offenses; and whether the applicant is presently a competent physician."
With the foregoing in mind, we find from a review of the record that the trial court erred on two grounds. First, the trial court's order stating that the Board's ruling was not "arbitrary or unreasonable" reveals that the trial court failed to hold a de novo review as required by Code 1975, § 20-2-53, but rather, merely chose to search the Board's decision for any abuse of discretion. The trial court's failure to apply the appropriate standard of review, in this instance, warrants reversal. The right to practice medicine is a property right which may be denied only if the denial is consonant with due process. Katz, 351 So.2d at 892. Due process requires, among other things, a hearing consistent with the essentials of a fair trial, which include holding a de novo hearing when required by law. Medical Services Administration v. Duke,378 So.2d 685, 686 (Ala. 1979); Katz, 351 So.2d at 892.
Second, we find that in view of the evidence presented, the trial court's conclusions are not supported by the record and are clearly erroneous. Admittedly, Dr. Benton testified that she had admitted herself to the United States Public Health Hospital in Kentucky for the purpose of treating a narcotics addiction some twenty-five years ago. The obvious inference from this fact, a narcotics addiction, was supported by a record of Dr. Benton's abnormally high schedule II drug orders during that same period of time. Nevertheless, the record is completely devoid of any other relevant evidence to support the conclusion that Dr. Benton's prescription rights should continue to be restricted twenty-five years later.
Under the Katz criteria, the relevant inquiries before the trial court were: (1) whether there is now a likelihood of Dr. Benton's violating the provisions of Code 1975, § 34-24-360; (2) whether twenty-five years is a sufficient penalty for any offense Dr. Benton may have committed; (3) whether Dr. Benton is presently a competent physician. Dr. Benton met her burden of proof as to each of these inquiries.
Regarding the first inquiry, Dr. Hugh C. MacGuire testified that he had known Dr. Benton for over thirty years in a professional capacity and had been aware of her schedule II restriction. Nevertheless, Dr. MacGuire noted that he had neither witnessed nor heard any reports of Dr. Benton's administering narcotics to herself or her patients. He concluded that Dr. Benton would be quite capable of properly dispensing schedule II narcotics.
Dr. Benton also introduced letters of recommendation from Doctors James Kirksey, Jr., and M.T. Gordon. Both physicians praised Dr. Benton's abilities and professional conduct.
Finally, an investigation conducted by the Board itself in 1974 concluded that "agents found nothing unusual in the prescribing habits of Dr. Benton." We note additionally that Dr. Benton has been empowered to dispense schedule III narcotics since 1981 with no apparent difficulties.
The Board failed to present any evidence suggesting a likelihood of continued *Page 238 
violations of Code 1975, § 34-24-360, on the part of Dr. Benton.
The second inquiry under the Katz criteria is whether the period of time an applicant has not been permitted to practice is sufficient penalty for the past offense. While the factual allegations raised by the Board are clear, namely that Dr. Benton has had a drug addiction, the Board has failed to articulate with specificity any offense which Dr. Benton is alleged to have committed. Because no party has challenged this fact, we must assume the offense warranting continued suspension of Dr. Benton's prescription rights is a violation of Code 1975, § 20-2-54 (a)(5). This section reads in part:
 "(a) A registration under section 20-2-52 to manufacture, distribute or dispense a controlled substance may be suspended or revoked by the certifying boards upon a finding that the registrant:
". . . .
 "(5) Has, in the opinion of the certifying board, excessively dispensed controlled substances for any of his patients.
 "a. A registrant may be considered to have excessively dispensed controlled substances if his certifying board finds that either the controlled substances were dispensed for no legitimate medical purpose, or that the amount of controlled substances dispensed by the registrant is not reasonably related to the proper medical management of his patient's illnesses or conditions. Drug addiction shall not be considered an illness or condition which would justify continued dispensing of controlled substances, except in gradually decreasing dosages administered to the patient for the purpose of curing the addiction."
We note on this point that the Board has never offered proof, at any time, that Dr. Benton actually dispensed narcotics to her patients other than her abnormally large orders of schedule II drugs some twenty-five years ago. Furthermore, the evidence is unrefuted that Dr. Benton has had no personal troubles with narcotics in twenty-five years, and has not misprescribed any drugs, schedule II or otherwise, in twenty-five years. We must conclude that in light of such evidence, twenty-five years is more than a sufficient penalty for her past offense. Any further restriction of Dr. Benton's prescription rights would be unduly harsh and oppressive.
The evidence presented regarding Dr. Benton's competency was that she graduated from the Johns Hopkins Medical School and has continued to maintain her continuing education credits. Dr. Benton served as chief medical officer at Gunter Air Force Station from 1973 to 1982. Dr. MacGuire testified that Benton had filled in for him in his office on a number of occasions and was quite a capable physician.
To refute this evidence, the Board proved that Benton had not practiced primary patient care in over ten years, but had merely been giving physicals at Gunter Air Force Station. No further relevant evidence was proffered by the Board proving any single act of incompetence or that Benton had failed to keep up with the changes that have been made in the practice of medicine that are now state of the art.
The Board posed several questions to Dr. Benton regarding why she would ever need schedule II prescription rights, suggesting that other scheduled drugs could adequately be substituted. This line of questioning was totally immaterial to the issue before the Board. The issue before the Board and trial court was not why Dr. Benton now needed her property rights, but rather, why she was now being denied them.
Ironically, Dr. Benton's answers to this line of questioning worked in her favor, exemplifying a professional, competent, and current knowledge of the proper use and substitutes for various schedules of drugs.
Based on the foregoing, we hold that the trial court abused its discretion by applying an inappropriate standard of review and reaching erroneous conclusions of fact and law wholly unsupported by the record. Accordingly, the order of the trial *Page 239 
court is reversed and the cause remanded with directions to enter an order requiring the Alabama Board of Medical Examiners to grant Dr. Benton an unrestricted Alabama controlled substance certificate.
REVERSED AND REMANDED WITH DIRECTIONS.
FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in part and dissents in part.
MADDOX, J., recused.