674 So.2d 1260 (1995)
JIM BURKE AUTOMOTIVE, INC.
v.
Detrecia BEAVERS.
1940564.
Supreme Court of Alabama.
September 29, 1995.
Opinion on Overruling of Rehearing February 23, 1996.
*1261 William A. Davis III and Steven T. McMeekin of Starnes & Atchison, Birmingham, for appellant.
Clay Hornsby of Morris, Haynes, Ingram & Hornsby, Alexander City, for appellee.
KENNEDY, Justice.
The defendant, Jim Burke Automotive, Inc. ("Jim Burke"), sold a used automobile to the plaintiff, Detrecia Beavers, and, as agent of an insurer, also sold her a credit disability policy. Jim Burke appeals from the denial of a motion to compel Beavers to arbitrate the claims presented in her action against Jim Burke.
Beavers's action involves her purchase of the credit disability insurance in conjunction with her purchase and financing of the car. Beavers became disabled, and the insurer did not pay on the policy as she says Jim Burke represented that it would at the time she bought the policy. She sued Jim Burke, alleging fraud in the inducement. Based on a predispute arbitration agreement in the sales contract for the automobile, Jim Burke moved to compel arbitration. As indicated, the trial court denied that motion.
Even if the arbitration provision in the sales contract is broad enough to apply to matters involving the credit life disability policy, as Jim Burke argues on appeal, it still remains to be seen that the sales contract involved interstate commerce. A predispute agreement to arbitrate is not legally enforceable in our state courts unless it is contained in a contract that involves interstate commerce. See Allied-Bruce Terminix Companies, Inc. v. Dobson, ___ U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Ala.Code 1975, § 8-1-41(3).
Jim Burke offered no evidence in the trial court indicating that the contract had any involvement in interstate commerce. However, it argues that an agreement for the sale of an automobile, per se, involves interstate commerce.
It affirmatively appears from the record that Jim Burke has raised this argument for the first time on this appeal. There is no indication in the record that in seeking to compel arbitration Jim Burke asserted that it did not have to demonstrate that the contract involved interstate commerce, on the basis that its involvement with interstate commerce should be assumed, or on any other basis. In light of this, and the fact that Jim Burke did not demonstrate in the trial court that the contract involved interstate commerce, we affirm.
AFFIRMED.
ALMON, SHORES, COOK, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
INGRAM, J., recused.
MADDOX, Justice (dissenting).
The majority affirms an order of the trial court refusing to compel arbitration of a dispute among the purchaser of a used automobile, the seller of the automobile, and a credit disability insurance carrier on the ground that the seller "did not demonstrate in the trial court that the contract involved interstate commerce." 674 So.2d at 1261. Because the majority affirms on this basis, I state some of the basic facts to show that this contract did, in fact, involve interstate commerce and is covered by the provisions of the Federal Arbitration Act.
On June 11, 1993, the plaintiff, Detrecia Beavers, purchased a used 1990 Chevrolet Lumina from the defendant, Jim Burke Automotive, Inc. Simultaneously with Beavers's purchase of the automobile, she also purchased credit disability insurance, to *1262 make payments on the vehicle in the event she became disabled.
Subsequently, Beavers, claiming to have become disabled because of a back injury and depression, filed a claim for disability benefits under the credit disability insurance policy. The insurance carrier, American Bankers Insurance Group, an out-of-state corporation, subsequently denied her claim for benefits.
When Beavers purchased the automobile and the credit disability insurance, she executed a "retail buyer's order," which read, in part:
"DISPUTE RESOLUTION AGREEMENT
"Buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer and Jim Burke Automotive, Inc. arising out of or in connection with the purchase of this vehicle will be resolved by arbitration in accordance with the procedures set forth on the reverse side of this buyer's order."
(Emphasis added.) The reverse side of the buyer's order contained the following description of the dispute resolution process:
"DISPUTE RESOLUTION PROCESS
"All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance or non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof of any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act and according to the commercial rules of the American Arbitration Association then in effect in Birmingham, Alabama. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party shall bear its own arbitration costs and expenses, except to the extent provided on the [front] side hereof.
". . . .
"The parties stipulate that the provisions hereof shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court, or before any administrative tribunal with respect to any controversy or dispute arising hereunder." (Emphasis added).
After American Bankers' had denied Beavers's claim under the credit disability insurance policy, she sued American Bankers and Jim Burke Automotive, Inc. In Count I, Beavers alleged that both Jim Burke and American Bankers committed fraud when she purchased the automobile and credit disability insurance. Her fraud count includes an allegation of misrepresentation of material facts, suppression, deceit, and fraudulent deceit.
Based upon the arbitration agreement between Beavers and Jim Burke contained in the retail buyer's order, Jim Burke moved on October 10, 1994, to compel arbitration. In the motion, Jim Burke sought require the plaintiff to arbitrate her claims against Jim Burke pursuant to the parties' arbitration agreement, basing its motion to compel arbitration upon § 2 of the Federal Arbitration Act. The trial court held a hearing on the motion on December 13, 1994, and denied it.
Did the trial court err in holding that the predispute arbitration agreement in this case was unenforceable? Clearly, it did. If there was any remaining doubt about the enforceability of such predispute arbitration agreements, and about whether the Federal Arbitration Act preempted conflicting state law, the Supreme Court of the United States removed that doubt in Allied-Bruce Terminix Companies, Inc. v. Dobson, ___ U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), a case appealed from this Court. In that case, this Court held, as it had held on several other occasions and as it holds in the present case, that the predispute arbitration agreement was unenforceable. The Supreme Court of the United States plainly and specifically said that this Court had incorrectly *1263 interpreted the provisions of the Federal Arbitration Act:
"The Supreme Court of Alabama upheld the denial of the stay on the basis of a state statute, [Ala.Code 1975, § 8-1-41(3)], making written, predispute arbitration agreements invalid and `unenforceable.' 628 So.2d 354, 355 (Ala.1993). To reach this conclusion, the court had to find that the Federal Arbitration Act, which pre-empts conflicting state law, did not apply to the termite contract. It made just that finding. The court considered the federal Act inapplicable because the connection between the termite contract and interstate commerce was too slight. In the court's view, the Act applies to a contract only if `"at the time [the parties entered into the contract] and accepted the arbitration clause, they contemplated substantial interstate activity."' Ibid. (emphasis in original) (quoting Metro Industrial Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 387 (CA2) (Lumbard, C.J., concurring), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961)). Despite some interstate activities (e.g., Allied-Bruce, like Terminix, is a multi-state firm and shipped treatment and repair material from out of state), the court found that the parties `contemplated' a transaction that was primarily local and not `substantially' interstate.
"Several state courts and federal district courts, like the Supreme Court of Alabama, have interpreted the Act's language as requiring the parties to a contract to have `contemplated' an interstate commerce connection. See, e.g., Burke County Public Schools Bd. of Ed. v. Shaver Partnership, 303 N.C. 408, 417-420, 279 S.E.2d 816, 822-823 (1981); R.J. Palmer Constr. Co. v. Wichita Band Instrument Co., 7 Kan.App.2d 363, 367, 642 P.2d 127, 130 (1982); Lacheney v. Profitkey Int'l, Inc., 818 F.Supp. 922, 924 (ED Va.1993). Several Federal appellate courts, however, have interpreted the same language differently, as reaching to the limits of Congress' Commerce Clause power. See, e.g., Foster v. Turley, 808 F.2d 38, 40 (CA10 1986); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 406-407 (CA2 1959), cert. dism'd, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); cf. Snyder v. Smith, 736 F.2d 409, 417-418 (CA7), cert. denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). We granted certiorari to resolve this conflict, 510 U.S. ___, 114 S.Ct. 1292, 127 L.Ed.2d 646 (1994); and, as we said, we conclude that the broader reading of the statute is the right one."
___ U.S. at ___, 115 S.Ct. at 837.
In interpreting the provisions of the Federal Arbitration Act, specifically § 2 of that Act, "as reaching to the limits of Congress' Commerce Clause power," as Allied-Bruce Terminix requires, the only question is whether this particular agreement is within the purview of the Act. Clearly, it is, especially given the "broader reading" of that Act.
Congress, exercising its power to regulate interstate commerce, has specifically authorized the regulation of the sale of used automobiles, and there could never be a clearer case of coverage of the Federal Arbitration Act. See Code of Federal Regulations, Title 16, Commercial Practices, Chapter 1, Federal Trade Commission, Subchapter D, Trade Regulation Rules, Part 455, Used Motor Vehicle Regulation Rule. 16 C.F.R. 455.
The arbitration agreement involved in this case was included as a part of the retail buyer's order, and because of that I cannot see how there can be any question that the transaction involved interstate commerce, as interpreted in Allied-Bruce Terminix, and that the terms of the predispute arbitration agreement are plain and unambiguous and apply to the claims against Jim Burke. It covers "[a]ll disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or ... any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact" (emphasis added).
Did the plaintiff agree with Jim Burke that any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact would be submitted to arbitration? Obviously, she did. Because she did, I dissent, as I have on several other occasions *1264 when this Court has refused to compel arbitration under similar circumstances. See, Ex parte Alabama Oxygen Co., 433 So.2d 1158, 1168 (Ala.1983) (Maddox, J., dissenting), reversed, York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984), after remand, 452 So.2d 860 (Ala.1984). In Continental Grain Co. v. Beasley, 628 So.2d 319, 323 (1993), in a special concurrence, I stated that this Court should be applying a test like the one now mandated by the United States Supreme Court in its Allied-Bruce Terminix opinion, supra:
"I disagree with the majority's use of the `contemplation' test of Ex parte Warren, 548 So.2d 157 (Ala.1989), cert. denied sub nom. Jim Skinner Ford, Inc. v. Warren, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). Instead, I believe that the `slightest nexus' test of Ex parte Costa & Head (Atrium) Ltd., 486 So.2d 1272 (Ala.1986), provides the proper analysis. See my dissenting opinion in Ex parte Jones, 628 So.2d 316 (Ala.1993) (Maddox, J., dissenting). Applying that test, I believe that the arbitration agreements are specifically enforceable pursuant to the FAA, because the contracts have at least the slightest nexus with interstate commerce; therefore, I concur in the result reached by the majority."
628 So.2d at 323. I realize that the United States Supreme Court denied certiorari review in Ex parte Warren, 548 So.2d 157 (Ala.1989), cert. denied sub nom. Jim Skinner Ford, Inc. v. Warren, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989), which, like this case, involved the sale of an automobile, but in view of that Court's holding in Allied-Bruce Terminix, I do not believe great significance should be attached to that earlier denial of certiorari review in Ex parte Warren.
I realize that some vigorous dissents filed in the Allied-Bruce Terminix would compel the conclusion reached by the majority in this case, but even Justice Scalia said he would no longer dissent. Justice Scalia wrote:
"I have previously joined two judgments of this Court which rested upon the holding of Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). In neither of those cases, however, did any party ask that Southland be overruled, and it was therefore not necessary to consider the question. In the present case, by contrast, one of respondents' central arguments is that Southland was wrongly decided, and their request for its overruling has been supported by an amicus brief signed by the attorneys general of 20 States. For the reasons set forth in Justice THOMAS' opinion, which I join, I agree with the respondents (and belatedly with Justice O'CONNOR) that Southland clearly misconstrued the Federal Arbitration Act.
"I do not believe that proper application of stare decisis prevents correction of the mistake. Adhering to Southland entails a permanent, unauthorized eviction of state-court power to adjudicate a potentially large class of disputes. Abandoning it does not impair reliance interests to a degree that justifies this evil. Primary behavior is not affected: no rule of conduct is retroactively changed, but only (perhaps) the forum in which violation is to be determined and remedied. I doubt that many contracts with arbitration clauses would have been forgone, or entered into only for significantly higher remuneration, absent the Southland guarantee. Where, moreover, reliance on Southland did make a significant difference, rescission of the contract for mistake of law would often be available. See 3 A. Corbin, Corbin on Contracts § 616 (1960 ed. and Supp.1992); Restatement (Second) of Contracts § 152 (1979).
"I shall not in the future dissent from judgments that rest on Southland. I will, however, stand ready to join four other Justices in overruling it, since Southland will not become more correct over time, the course of future lawmaking seems unlikely to be affected by its existence, cf. Pennsylvania v. Union Gas Co., 491 U.S. *1265 1, 34-35, 109 S.Ct. 2273, 2298-2299, 105 L.Ed.2d 1 (1989) (SCALIA, J., concurring in part and dissenting in part), and the accumulated private reliance will not likely increase beyond the level it has already achieved (few contracts not terminable at will have more than a 5-year term).
"For these reasons, I respectfully dissent from the judgment of the Court."
___ U.S. at ___, 115 S.Ct. at 844-45.
A majority of this Court, like the Justices of the United States Supreme Court who dissented in Allied-Bruce Terminix, believe that the majority of the Justices of the Supreme Court of the United States have misinterpreted congressional intent. As I have already pointed out, I have always been of the opinion that the Supreme Court of the United States, in Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), correctly interpreted congressional intent; therefore, I concur only with the result, which remands the cause to the trial court.
Because I believe that I am on the side of the majority of the Supreme Court of the United States, I am going to continue to dissent from judgments such as the one entered today in this case.
HOUSTON, J., concurs.

On Application for Rehearing
PER CURIAM.
"The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and the existence of an arbitrable dispute. In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim." In re American Freight System, Inc., 164 B.R. 341, 345 (D.Kan.1994), citing Engineers Association v. Sperry Gyroscope Co., 251 F.2d 133 (2d Cir.1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958), and Banque de Paris et des Pays-Bas v. Amoco Oil Co., 573 F.Supp. 1464, 1468 (S.D.N.Y. 1983). See also Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir.1984), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 442 (2d Cir.1964); Liberty University, Inc. v. Kemper Securities Group, Inc., 758 F.Supp. 1148 (W.D.Va.1991); Pioneer Supply Co. v. American Meter Co., 484 F.Supp. 227, 229 (W.D.Okla.1979); Penalver v. Compagnie De Navigation Frutiere, Matouba, 428 F.Supp. 1070, 1072 (E.D.N.Y.1977).[1]
Jim Burke's motion to compel arbitration fails even to allege that the transaction involves interstate commerce; the closest it comes is to say that "when an agreement substantially affects interstate commerce and contains specific provisions requiring arbitration of disputes between the parties, that agreement is specifically enforceable under the Federal Arbitration Act." This is a general statement of the law, not an allegation that the transaction in question involves interstate commerce. Attached to the motion is a copy of the contract, but it does not show on its face that the transaction involves interstate commerce, certainly not so plainly as to require a reversal of the denial of the motion. Co-defendant American Bankers Life Assurance *1266 Company of Florida asserted in its answer that it was "a foreign corporation licensed to do business in the State of Alabama," but this fact is not cited in the record as a ground for granting Jim Burke's motion. A hearing was held, but it was not transcribed; thus, nothing presented at that hearing can be cited as a basis for reversing the denial of arbitration.
In short, Jim Burke has failed to show that on the record it met its burden of supporting its motion to compel arbitration.[2] Under the circumstances, this Court must affirm the circuit court's order denying that motion.
APPLICATION OVERRULED.
ALMON, SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent. The majority is mistaken in resisting the strong federal policy in favor of arbitration as established by the Congress and as applied by the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit. While I agree with the majority that it is reasonable to require the party moving for arbitration to bear the burden of proving the existence of a contract calling for arbitration, I strongly disagree with the proposition that that same party should also bear the burden of proving the existence of an arbitrable dispute. In its opinion, the majority cites a string of weak, ancient, and nonbinding cases. One of the main purposes of arbitration is to avoid the time and expense of a trial. The majority opinion proposes that the parties to an arbitration agreement have a trial to determine whether there should be a trial. That assertion effectively undermines the very purposes for including an arbitration clause in a contract.
The United States Supreme Court is the final arbiter of federal law, including, specifically in regard to the problem now before us, the Federal Arbitration Act ("FAA"). If there is a United States Supreme Court case that offers this Court guidance and an Eleventh Circuit case that also offers it guidance, why does the majority cite a nearly 40-year-old case from the United States Court of Appeals for the Second Circuit?[3] Why cite a Kansas federal district court bankruptcy case that was not even appealed?[4]
It seems to me that the trial judge's determination as to whether a dispute should be arbitrated is best understood through the following analysis: The trial judge should determine two main issues, as a matter of law. First, is there a dispute that is within the scope of an arbitration agreement. Second, if so, is that dispute covered by the FAA, based upon whether the transaction involves interstate commerce.[5]
On the first issue, the party seeking to arbitrate the dispute should bear the burden of proving the existence of a contract calling for arbitration, e.g., by providing the court a *1267 copy of the contract. However, when that party produces that proof, the burden should then shift to the party opposing arbitration, who should then be required to present evidence showing that the dispute is outside the scope of the arbitration agreement.
I do not discuss the second issuewhether the transaction at issue in this case involves interstate commercebut I concur with Justice Maddox's discussion of that issue.

I. The Federal Arbitration Act.
The task of the judicial branch of government is to interpret the law. Alabama Life Ins. & Trust Co. v. Boykin, 38 Ala. 510 (1863). In this case, this Court must determine whether the FAA applies and, if it does, then what effect, if any, it has on burdens of proof.
Section three of the FAA provides:
"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
9 U.S.C. § 3. The Act speaks of the courts' power to decide whether a case is referable to arbitration, but the Act does not say which party has the burden of proving that the case is, or is not, referable to arbitration. The United States Supreme Court, the final interpreter of federal law, addressed this general issue in 1987.

II. The United States Supreme Court.
The United States Supreme Court has held in two fairly recent casesShearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1992)that a party opposing arbitration on the basis that a Congressional act supersedes the FAA bears the burden of proving that the act on which that party is basing his claim supersedes the FAA. These cases, while distinguishable, are extremely persuasive.
The plaintiffs in McMahon and Gilmer sought to show that a Congressional act on which those parties were basing their claims superseded the FAA. In McMahon, customers brought tort, securities fraud, and RICO claims against a broker. One of the questions the Supreme Court addressed was whether the party opposing arbitration has the burden of showing that the case is not referable to arbitration. The Supreme Court said:
"The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue...."
McMahon, 482 U.S. at 226-27, 107 S.Ct. at 2337-38. (Emphasis added.) See also Gilmer.
The plaintiff in our case, Beavers, does not even allege that a federal law precludes the application of the FAA. If a party asserting that a federal law preempts the FAA must bear the burden of proving the existence of a nonarbitrable dispute, how much more certainly should the burden of proof fall upon a party opposing arbitration, who makes no allegation that the FAA has been preempted? These two United States Supreme Court cases show just how strong a presumption in favor of arbitration that Court has. The rationale of these two cases gives clear guidance to this Court as to where to place the burden of proof. The majority has not followed that guidance.

III. The United States Court of Appeals for the Eleventh Circuit.
In 1992, the United States Court of Appeals for the Eleventh Circuit also addressed *1268 the issue whether the party opposing arbitration has the burden to show that the case is not referable to arbitration. In Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir.1992), a securities firm had moved to compel arbitration of a customer's securities claims against the firm. The Court held:
"A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party [the party opposing arbitration] must substantiate the denial of the contract with enough evidence to make the denial colorable."
957 F.2d at 855. When the Eleventh Circuit says "that party," it is referring to the party who "place[s] the making of the arbitration agreement in issue." According to the Eleventh Circuit, the burden is on the party opposing arbitration to show that the case is not referable to arbitration.
The majority does not cite any United States Supreme Court cases for the proposition that the party seeking arbitration has the burden of proof; it cannot. Furthermore, it does not cite any Eleventh Circuit cases for that proposition; it cannot. It cites only one arguably recent decision from a United States Circuit Court of Appeals, Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984), discussed below in Part IV.

IV. Goodwin v. Elkins & Co.
In Goodwin, a partner who sold his interest in a brokerage firm sued the firm, a partnership, asserting federal securities law violations. The Court of Appeals for the Third Circuit affirmed the district court's reference of the claims to arbitration. The court wrote in a footnote: "Since Elkins [the partnership] raises arbitration as an equitable defense, it is not only proper, but required that it produce evidence to support it." 730 F.2d at 109 n. 20. I agree with the Third Circuit's logic, but in this case the majority's extension of that logic is inappropriate. The majority cites Goodwin for the proposition that "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and the existence of an arbitrable dispute." 674 So.2d at 1265. (Emphasis added.) I agree that the party seeking to compel arbitration should bear the burden of proving "the existence of a contract calling for arbitration,"[6] but the burden should then shift to the party opposing arbitration to prove the existence of a nonarbitrable dispute.
Assuming, arguendo, that Goodwin did stand for the proposition for which the majority cites it, Goodwin would still not be binding upon this Court, and it would be unpersuasive because it predates the United States Supreme Court's opinions in McMahon and Gilmer and the Eleventh Circuit's opinion in Chastain.
The majority cites the Third Circuit's 1984 decision in Goodwin, but fails to mention a 1990 decision from the Third Circuit that would have effectively overruled Goodwin if Goodwin stood for the proposition for which the majority cites it. PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990). In PaineWebber, the Third Circuit followed the guidance of the Supreme Court in determining "whether an [arbitration] agreement exists and [whether] the dispute falls within the scope of the agreement," 921 F.2d at 511. The Third Circuit wrote:
"If ... the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute. AT & T Technologies [Inc.] v. Communications Workers of America, [475 U.S. 643, 648,] 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986).... In making this determination, the court must operate under a `presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."'"
921 F.2d at 511 (emphasis added) (quoting AT & T Technologies, Inc., 475 U.S. 643, 106 *1269 S.Ct. 1415, 89 L.Ed.2d 648, decided after Goodwin). The Third Circuit held in Paine-Webber that when a trial court determines whether an arbitration agreement exists and whether the dispute falls within the scope of the agreement, there is a presumption in favor of arbitrability. That presumption can be defeated only "with positive assurance" by the party opposing arbitration. 921 F.2d at 511.
PaineWebber is directly on point, yet the majority does not mention it. Instead, it cites the old Goodwin case, and for an incorrect proposition.

V. Cases from Other United States Courts of Appeals.
There is a wealth of recent case law from other United States Courts of Appeals. I summarize here some representative cases:

A. The Second Circuit.
In 1987, the Court of Appeals for the Second Circuit held that "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate [a] trial...." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir.1987).

B. The Fourth Circuit.
In 1993, the Court of Appeals for the Fourth Circuit wrote: "The McMahon Court established the framework for determining whether an arbitration agreement is enforceable under the FAA. The [Supreme] Court ruled that the [FAA] standing alone mandates enforcement of arbitration agreements.... The burden is on the party opposing arbitration to show that Congress intended to preclude waiver." Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195 (4th Cir.1990), aff'd, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

C. The Fifth Circuit.
In 1992, the Court of Appeals for the Fifth Circuit wrote, "Certainly, the party resisting arbitration must put the existence of an agreement to arbitrate in issue." Heinhuis v. Venture Associates, Inc., 959 F.2d 551, 554 (5th Cir.1992) (the court did not discuss who bears the burden after the existence of an agreement to arbitrate is put in issue); and see Walker v. J.C. Bradford & Co., 938 F.2d 575 (5th Cir.1991) (court indulges presumption against waiver of contractual right to arbitrate).
The Fifth Circuit also said that that court's "precedent places a `heavy burden' on a party claiming waiver of arbitration rights." Storey v. Shearson-American Express Inc., 928 F.2d 159, 163 (5th Cir.1991). See also Bhatia v. Johnston, 818 F.2d 418 (5th Cir. 1987) (under the FAA, the party resisting arbitration has a heavy burden of showing that he is entitled to a jury trial); and see Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416 (5th Cir.1985) (the burden on a party seeking to prove a waiver of arbitration is a heavy one).

D. The Seventh Circuit.
In 1993, the Court of Appeals for the Seventh Circuit wrote:
"Finally, when an agreement contains an arbitration clause, there is a presumption of arbitration in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"
International Brotherhood of Teamsters, Local No. 371 v. Logistics Support Group, 999 F.2d 227, 229 (7th Cir.1993). That same year, the same court also said:
"In evaluating Miller's analysis, we keep in mind the controlling presumption that arbitration is favored `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"
S + L + H S.p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1524 (7th Cir.1993). (Emphasis original.)

E. The Ninth Circuit.
In 1992, the Court of Appeals for the Ninth Circuit wrote: "Mago, as the party opposing the arbitration, bears the burden of showing `that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.'" Mago v. Shearson Lehman *1270 Hutton Inc., 956 F.2d 932, 935 (9th Cir.1992), citing Shearson/American Express, Inc. v. McMahon, supra. See also Britton v. Co-op. Banking Group, 916 F.2d 1405 (9th Cir.1990), appeal after remand, 4 F.3d 742 (9th Cir.1993) (party arguing waiver of arbitration bears heavy burden of proof); and see Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095, 834 F.2d 751 (9th Cir.1987), cert. denied, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988), amended, 856 F.2d 1572 (1988).

F. The Tenth Circuit.
In 1989, the Court of Appeals for the Tenth Circuit wrote: "Parties seeking to prove waiver of arbitration obligations bear a heavy burden; they must show substantial prejudice." Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696 (10th Cir. 1989).[7]

G. The Eleventh Circuit.
See Part III.

H. Summary.
The overwhelming majority of cases from the United States Courts of Appeals correctly hold that the party opposing arbitration bears the burden of proving the existence of a nonarbitrable dispute.

VI. Conclusion.
In matters of arbitration that involve the FAA, this Court must follow the guidance of the United States Supreme Court. It is clear from the holdings of that Court and the Court of Appeals for the Eleventh Circuit that the burden is on the party opposing arbitration to show that the case is not referable to arbitration. I have cited quite a few cases from the Supreme Court and other federal courts; if my reading of those cases is correct, then I must conclude that a majority of this Court is either misunderstanding or resisting the guidance of the federal courts on issues involving the FAA. Therefore, I must respectfully dissent.
MADDOX, Justice (dissenting).
I dissented from the opinion of the Court on original deliverance, and I desire to add a few comments to what I said then and to explain why I believe the Court should grant Jim Burke's application for rehearing. To further substantiate the legal basis for my dissent, I also desire to state some of the history of the application of the Commerce Clause, and to point out the Court's failure to follow the principles of law set out by the United States Supreme Court's holding in Allied-Bruce Terminix Cos. v. Dobson, ___ U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
The contract in this case, involving the sale of a used automobile, involves interstate commerce, as defined in the Allied-Bruce Terminix case. It is clear that Jim Burke presented to the trial court sufficient evidence that the contract did, in fact, involve interstate commerce. Therefore, I must respectfully disagree with this Court's contrary holding,[8] and I file this additional dissent from the Court's denial of Jim Burke's application for rehearing.
The law states that the proper standard of review for an appellate court to apply in determining whether arbitration should be compelled is a de novo standard. See, Ex *1271 parte Warrior Basin Gas Co., 512 So.2d 1364 (Ala.1987). Similarly, federal courts have constantly held that "determinations of arbitrability, like the interpretation of any contractual provision, are subject to de novo review." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991), cert. denied, 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992). See, e.g., Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Wrkrs. Int'l, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993); Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509 (11th Cir.1993); Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16 (2d Cir.1995); Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511 (10th Cir.1995); Tracer Research Corp. v. National Environmental Services Co., 42 F.3d 1292 (9th Cir. 1994); McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82 (2d Cir.1994); Britton v. Co-op. Banking Group, 4 F.3d 742 (9th Cir.1993); Saari v. Smith Barney, Harris Upham & Co., 968 F.2d 877 (9th Cir.), cert. denied, 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); Storey v. Shearson Lehman Hutton, Inc., 949 F.2d 1039 (8th Cir.1991); Catholic Diocese of Brownsville, Texas v. A.G. Edwards & Sons, Inc., 919 F.2d 1054 (5th Cir.1990); Paulson v. Dean Witter Reynolds, Inc., 905 F.2d 1251 (9th Cir.1990); Nordin v. Nutri/System, Inc., 897 F.2d 339 (8th Cir.1990); United States v. City of Twin Falls, 806 F.2d 862 (9th Cir. 1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987).
In discussing the standard of review an appellate court should use in determining whether a trial court has correctly ruled on a question of law, this Court has held that
"rulings on these motions do not fall within the trial court's discretionary function; thus, if alleged error is properly preserved and presented on appeal, these rulings are subject to de novo review, i.e., a review without any assumption of correctness."
King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala. 1987) (emphasis added). See, Otis Elevator of Gadsden, Inc. v. Scott, 586 So.2d 200 (Ala. 1991). De novo review of a trial court's ruling on a question of law is an important component of a party's Fourteenth Amendment right to due process. "Due process requires, among other things, a hearing consistent with the essentials of a fair trial, which include holding a de novo hearing when required by law." Benton v. Alabama Bd. of Medical Examiners, 467 So.2d 234, 237 (Ala.1985). See, Medical Services Administration v. Duke, 378 So.2d 685 (Ala. 1979); Katz v. Alabama State Board of Medical Examiners, 351 So.2d 890 (Ala.1977). Because a motion to compel arbitration presents a question of law for the trial court,[9] due process requires that we review the trial court's ruling de novo. Therefore, the law mandates that this Court undertake a de novo review to determine whether this contract for the sale of a used car, which contains the signed arbitration clause, evidences interstate commerce.[10] If the majority had used the proper standard of review in this case, as I believe I have, it could reach only one conclusionthat this contract on its face, absent any extrinsic evidence, shows that this transaction involves interstate commerce.
As I stated in my original dissent, there is no question that this contract, which contains an agreement to arbitrate, involves interstate commerce, because the contract was not only for the sale of a used car, which is highly regulated by Congress in the exercise of its enumerated powers, but it is also apparent from the record that a credit disability insurance policy, underwritten by a Florida corporation, was part of the sales agreement. Because all these facts can be ascertained simply by looking at the contract, I cannot agree with the holding of the majority on rehearing that the contract "does not show on its face that the transaction involves interstate commerce, certainly *1272 not so plainly as to require a reversal of the denial of the motion [to compel arbitration]." 674 So.2d 1261. Based on my thorough research of federal law interpreting Congress's power to regulate interstate commerce, I am convinced that the holding of the majority is erroneous.
The United States Constitution delegates to Congress the power "[t]o regulate commerce with foreign Nations, and among the several states, and with Indian Tribes." U.S. Const., Art. I, § 8, cl. 3. From the outset of constitutional jurisprudence, many questions have been raised concerning the breadth of this provision, in terms of the extent to which Congress may regulate commerce. Chief Justice John Marshall first addressed this provision of the Constitution in the seminal case of Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). In that case, the Chief Justice, noting that the Constitution allowed Congress to "regulate commerce ... among the several states," gave the first interpretation of this constitutional delegation of power, stated:
"Comprehensive as the word `among' is, it may very properly be restricted to that commerce which concerns more states than one.... The enumeration presupposes something not enumerated; and that something, if we regard the language or the subject of the sentence, must be the exclusively internal commerce of a State."
22 U.S. (9 Wheat.) at 194-95 (emphasis added). Thus, the very first interpretation of Congress's power to regulate interstate commerce held that this power extends to the regulation of commerce "which concerns more states than one."
The contract in this case involved the sale of a used automobile. As I stated in my initial dissent, Congress extensively regulates the sale of both new and used automobiles. Therefore, Congress explicitly recognizes that the sale of a used car involves interstate commerce.
The definition of "interstate commerce" has been greatly extended beyond the original interpretation given by Chief Justice Marshall. Before 1937, the Supreme Court decisions interpreting the Commerce Clause dealt almost entirely with the Commerce Clause as a restriction on state legislation and interpreted the reach of the Commerce Clause in a more narrow manner than more recent decisions. See, e.g., A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); United States v. E.C. Knight Co., 156 U.S. 1, 15 S.Ct. 249, 39 L.Ed. 325 (1895); Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346 (1888); Veazie v. Moor, 55 U.S. (14 How.) 568, 14 L.Ed. 545 (1852). In 1937, the Court expanded the interpretation of what was considered interstate commerce in NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), and abandoned the previous distinction that had been made between direct and indirect effects on interstate commerce, so as to expand Congress's regulatory power. See also, Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Wrightwood Dairy Corp., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). For example, in Wickard v. Filburn the Court held that the powers of Congress under the Commerce Clause extended to the regulation of the activities of a farmer who had violated the Agricultural Adjustment Act of 1938 by harvesting more wheat than was allowed under the Act. Although Filburn had grown this wheat primarily for his family's own consumption and had harvested only 12 more acres than was allowed by the Act, the Court held that this activity had a sufficient effect on interstate commerce to allow the United States to prosecute him for violating the Act. The Court, in determining that Filburn's activities involved interstate commerce, stated:
"One of the primary purposes of the Act in question was to increase the market price of wheat and to that end to limit the volume thereof that could affect the market. It can hardly be denied that a factor of such volume and variability as home-consumed wheat would have a substantial influence on price and market conditions. This may arise because being in marketable condition such wheat overhangs the market and if induced by rising prices tends to flow into the market and check *1273 price increases. But if we assume that it is never marketed, it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this sense competes with wheat in commerce."
Wickard, 317 U.S. at 128, 63 S.Ct. at 90. The Supreme Court has not limited this expansive interpretation of "interstate commerce," and the Court's opinions discussing the reach of the Commerce Clause seem to hold that almost any commercial transaction undertaken "affects" interstate commerce, no matter how slight, and therefore can be regulated by Congress. See, e.g., Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985); Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). These cases stand for the proposition that if any effect on interstate commerce can be found in a transaction, then the transaction is considered to be one involving interstate commerce.[11]
In refusing to enforce the arbitration agreement contained in the contract between Jim Burke and Ms. Beavers, on the ground that Jim Burke did not prove the contract involved interstate commerce, this Court is, wittingly or unwittingly, misinterpreting the holding of Allied-Bruce Terminix, supra, and this Court's action suggests that it is involved in a practice condemned in Allied-Bruce Terminix. In that case, the United States Supreme Court held that § 2 of the Federal Arbitration Act, which mandates that all disputes arising from contracts involving interstate commerce that contain arbitration agreements shall be submitted to arbitration, preempts any conflicting state law, and, regarding attempts to frustrate the application of that Act, the Court held: "[T]he statute's language permits the `commerce in fact' interpretation. That interpretation, we concede, leaves little work for the word `evidencing' (in the phrase `a contract evidencing a transaction') to perform, for every contract evidences some transaction." Allied-Bruce Terminix, ___ U.S. at ___, 115 S.Ct. at 842 (emphasis added).
The fact that Jim Burke simply submitted this contract to the trial court was sufficient evidence for the trial court to find that this contract involved interstate commerce,[12] and, unquestionably, the Supreme Court's decision in Allied-Bruce Terminix seems to support this conclusion, because there the Court asked this question: "Why would Congress intend a test that risks the very kind of costs and delay through litigation (about the circumstances of contract formation) that Congress wrote the Act to help the parties avoid?" Allied-Bruce Terminix, ___ U.S. at ___, 115 S.Ct. at 841.
Allied-Bruce Terminix established a major principle regarding the scope of the Federal Arbitration Act in regard to compelling arbitration. As I read that case, the majority of the Supreme Court said that the Act "reach[es] to the limits" of the Congress's *1274 power to regulate interstate commerce. Allied-Bruce Terminix, ___ U.S. at ___, 115 S.Ct. at 837. In determining that a domestic contract for termite protection was a contract involving interstate commerce, the Court stated that "the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." Allied-Bruce Terminix, ___ U.S. at ___, 115 S.Ct. at 843. Comparing the facts of this case, involving as it does the sale of a used automobile (a sale highly regulated by Congress), with the facts of Allied-Bruce Terminix, can there be any question that this contract for the sale of a used automobile involves interstate commerce? I think not.
There are many powers reserved to the States by the Tenth Amendment to the United States Constitution, but the regulation of interstate commerce is not one of them. The United States Supreme Court, in several decisions, has clearly set out the rules of law that govern the interpretation of the reach of the Federal Arbitration Act. There is disagreement on the United States Supreme Court about what Congress intended, but a majority of that Court has unmistakably held that a predispute arbitration agreement appearing in a contract such as this onei.e., in a contract clearly involving interstate commercemust be enforced.
Because this contract clearly involved interstate commerce, the arbitration agreement contained in it is subject to the provisions of the Federal Arbitration Act and must be enforced. Therefore, I must respectfully dissent from this Court's refusal to grant rehearing in this case.
HOOPER, C.J., and HOUSTON, J., concur.
NOTES
[1] The cases cited in Chief Justice Hooper's dissent are inapposite. Both Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1992), concern the burden on a party opposing arbitration to show that a Congressional act on which that party is basing his claim supersedes the FAA in McMahon, the plaintiff argued that RICO claims were not subject to arbitration, and in Gilmer the plaintiff argued that ADEA claims were not subject to arbitration. In Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir.1992), the plaintiff opposed the motion to arbitrate by presenting evidence that she had not signed the contract containing the arbitration clause. All three cases apply the principle that, after a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question. None of those three cases, and none of the other cases cited by the dissenting Justices, holds that a party requesting arbitration has no burden at all to support the request by showing, at least prima facie, the existence of a written contract between the parties containing an agreement to arbitrate disputes such as the one at issue and that the contract "evidenc[es] a transaction involving [interstate] commerce," 9 U.S.C. § 2.
[2] This Court recently remanded a factually similar case for reconsideration in light of Allied-Bruce Terminix Cos. v. Dobson, ___ U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). First Alabama Bank v. Vandiver [1940612, April 26, 1995, no opinion]. However, the motion to compel arbitration in Vandiver recited that the contract involved interstate commerce because the credit disability insurance policy involved in that case was issued by a Mississippi insurance corporation and because any notices given or proofs of claim made under that policy would be sent to Mississippi. No such recitation is included in Jim Burke's motion.
[3] That case it cites, Engineers Association v. Sperry Gyroscope Co., 251 F.2d 133 (2d Cir.1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958), predates the recent general policy of the United States Supreme Court in favor of upholding arbitration contracts. See Allied-Bruce Terminix Companies, Inc. v. Dobson, ___ U.S. ___ at ___, 115 S.Ct. 834, at 839 (1995); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).
[4] In re American Freight System, Inc., 164 B.R. 341 (D.Kan.1994).
[5] This same analysis is also discussed in my special concurrence in Allied Bruce-Terminix Companies v. Jackson, 669 So.2d 893 (Ala.1995), (on rehearing after remand).
[6] That party might meet this burden by presenting the trial judge with a motion to compel arbitration and attaching to it a copy of the arbitration agreement.
[7] In the Adams case, as published at 888 F.2d 696, the style carries the appellee's name with no commas, although the text of the opinion names the appellee more conventionally as "Merrill Lynch, Pierce, Fenner & Smith."
[8] The majority holds that arbitration in this case will not be compelled because, it says, "Jim Burke offered no evidence in the trial court that the contract had any involvement in interstate commerce." 674 So.2d at 1261.

Although Jim Burke filed a motion to compel arbitration, submitted the contract to the trial court when it moved for arbitration, and orally argued the motion to the trial judge, this Court wrote:
"There is no indication in the record that in seeking to compel arbitration Jim Burke asserted that it did not have to demonstrate that the contract involved interstate commerce, on the basis that its involvement with interstate commerce should be assumed, or on any other basis. In light of this, and the fact that Jim Burke did not demonstrate in the trial court that the contract involved interstate commerce, we affirm [the ruling of the trial court refusing to compel arbitration]."
674 So.2d at 1261. Therefore, the Court holds that the failure of Jim Burke to present evidence that the contract containing the arbitration clause involved interstate commerce precluded the trial court from compelling arbitration.
[9] Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509, 512 (11th Cir.1993).
[10] On original deliverance, the majority refused to compel arbitration because it found that Jim Burke had not presented sufficient evidence that the contract for the sale of a used car involved interstate commerce.
[11] See, Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). In that case, the Court held that a Birmingham barbecue restaurant was involved in interstate commerce, because, among other things, the establishment bought meat from a supplier that had procured the meat from outside Alabama. Id. at 296, 85 S.Ct. at 380.
[12] Federal caselaw supports this interpretation. In Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987), the Supreme Court wrote: "Section 2 [of the Federal Arbitration Act], therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce...." Id. at 489, 107 S.Ct. at 2525 (emphasis added). Additionally, the Court has held that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). According to the United States Court of Appeals for the Ninth Circuit, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has very little discretion to deny an arbitration motion, since the [Federal Arbitration] Act is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir.1991) (emphasis added).