736 So.2d 582 (1999)
SOUTHERN UNITED FIRE INSURANCE COMPANY
v.
Darron L. KNIGHT.
No. 1971559.
Supreme Court of Alabama.
April 2, 1999.
Rehearing Denied May 21, 1999.
*584 Marda W. Sydnor and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham, for appellant.
Chuck Hunter, Birmingham, for appellee.
HOUSTON, Justice.
Southern United Fire Insurance Company ("Southern United"), the defendant in an action pending in the Jefferson Circuit Court, appeals from the denial of its motion to compel arbitration of the various tort and contract claims filed against it by the plaintiff, Darron L. Knight. In denying the motion, the circuit court entered an order "dissolving [the] arbitration requirement." We affirm.
Knight purchased an automobile insurance policy from Southern United. After a dispute arose over the terms of coverage under that policy, Knight sued Southern United, seeking damages based on allegations of, among other things, fraud, breach of contract, intentional infliction of emotional distress, and bad-faith failure to pay an insurance claim. Southern United moved to compel arbitration, based on two broad arbitration provisionsone that appeared in the application Knight had signed and one that appeared in the policy that was later issued.[1] The arbitration provision in the application appeared immediately above Knight's signature, in bold type larger than some of the other type on the application; that provision was incorporated by reference into the policy. (For purposes of this opinion, the two provisions will sometimes be referred to in the singular.)
Knight responded to Southern United's motion by contending that he never agreed to arbitrate; he challenged the enforceability of the arbitration provision on various specific grounds, including fraudulent inducement and unconscionability. The trial court based its ruling on certain "ambiguities" that, it concluded, existed in the policy. *585 Specifically, the trial court stated that the policy's requirement that disputes concerning the amount of a covered loss be resolved by a panel of appraisers was irreconcilably at odds with the arbitration provision. The trial court also concluded that the arbitration provision was unenforceable for lack of mutual assent, because there were no specific references in the provision to the "cost of an arbitrator's services."
After carefully reviewing the record and the briefs, we conclude that the trial court's order is due to be affirmed, but not for the reasons stated by the trial court.[2] It is well settled that this Court can affirm a judgment on any valid ground supported by the record. See Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala. 1988).
The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., preempts contrary state law (specifically, contrary law based on Ala.Code 1975, § 8-1-41(3) and public policy) and renders enforceable a written predispute arbitration agreement *586 but only if that agreement appears in a contract evidencing a transaction that "involves" interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995); Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala.1995). This Court has held that even an intrastate transaction "involves" interstate commerce if it has a substantial effect on the generation of goods or services for interstate markets and their distribution to the consumer. See Delta Construction Corp. v. Gooden, 714 So.2d 975 (Ala.1998), citing Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala.1997). Unquestionably, insurance transactions that stretch across state lines or intrastate insurance transactions that otherwise have the requisite (substantial) effect on interstate commerce constitute "Commerce among the several States," so as to make them subject to regulation by Congress under the Commerce Clause of the United States Constitution. See United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998); United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, supra. The dispositive issue, as we see it, is whether Southern United carried its burden of proving that Knight's purchase of the insurance policy substantially affected interstate commerce.
Knight alleges in his complaint that he is a resident of Jefferson County; however, no evidence in the record indicates where Knight resides or where he was residing when he purchased the policy. Southern United's address, as shown on Knight's policy, is "P. 0. Box 190429, Mobile, Alabama 36619." This suggests that Southern United is an Alabama corporation. Knight argues that he is an Alabama resident and that he bought the insurance policy in Alabama from an Alabama corporation to cover his pickup truck for personal use. The trial court stated in its order that the policy was issued out of Mobile. On the other hand, Southern United argues that the policy issued to Knight "involves" interstate commerce because the policy's coverage territory included other states and because the policy applied to an accident or loss involving an insured automobile while it was being transported between ports within the coverage territory. The policy does state that the coverage territory extends beyond the borders of Alabama and that an insured automobile is protected against a loss occurring while it is being transported between ports in the coverage territory, which, according to the policy, includes the "United States, its territories or possessions, Puerto Rico, and Canada."
However, if what Knight argues is true, we fail to see how his purchase of a personal automobile policy in Alabama from an Alabama insurance company had a substantial effect on interstate commerce. We note that the policy did not cover an automobile used for business purposes, other than farming or ranching, and that there is no evidence that Knight was engaged in either farming or ranching. We can see only one conceivable connection between this insurance transaction and interstate commercethis intrastate transaction may be one of many such transactions that help fund Southern United's business, thus enabling it to issue other policies that substantially affect interstate commerce. However, we decline to hold, based on the record before us, that such a tenuous connection would be sufficient to invoke the FAA. See United States v. Lopez, supra (recognizing that there is an outer limit to Congress's power under the Commerce Clause).
Southern United had the burden of proving that Knight's purchase of the policy had a substantial effect on the generation of goods or services for an interstate *587 market and their distribution to the consumer. Because the record does not indicate that Southern United met that burden, we must affirm the trial court's order; we affirm it on the ground that the FAA is not applicable, and, therefore, that federal law has not preempted state law barring specific enforcement of a predispute agreement to arbitrate, § 8-1-41(3), Ala.Code 1975.
AFFIRMED.
KENNEDY, LYONS, BROWN, and JOHNSTONE, JJ., concur.
SEE, J., concurs specially.
COOK, J., concurs in the result.
HOOPER, C. J., and MADDOX, J., dissent.
SEE, Justice (concurring specially).
I concur with the majority's holding that Southern United Fire Insurance Company ("Southern United") failed to establish that its sale of an insurance policy to Darron Knight had a substantial effect on interstate commerce. I write specially, however, to emphasize the limited nature of this holding.
"[A]s a threshold matter ..., for the FAA [Federal Arbitration Act] to apply, the party seeking to compel FAA arbitration must show the existence of a written agreement that contains an arbitration clause and affects interstate commerce." Harrison v. Nissan Motor Corp., 111 F.3d 343, 348 n. 8 (3d Cir.1997). Although the effects on interstate commerce must be substantial, see United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) ("We conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity `substantially affects' interstate commerce."), those effects can be considered in the aggregate. See Wickard v. Filburn, 317 U.S. 111, 128, 63 S.Ct. 82, 87 L.Ed. 122 (1942).
This case concerns a local company selling an insurance policy to a local consumer. Southern United does not assert that this transaction has any interstate characteristics other than the coverage area of this one policy.[3] Southern United argues, without citing authority, that this insurance policy affects interstate commerce, and it makes this argument solely on the basis that the policy provides for the coverage of Knight if he travels outside the State of Alabama. Southern United does not, however, allege that Knight has traveled outside the State or that he ever will. Southern United does not even allege that it has any other policyholders whose premiums or activities could in the aggregate substantially affect interstate commerce.[4] *588 Based on the limited facts before this Court,[5] I cannot conclude that the issuance of this insurance policy by an Alabama company to a single Alabama consumer evidences the requisite substantial effect on interstate commerce necessary to implicate the Federal Arbitration Act. Therefore, I agree with the majority's decision to uphold the trial court's denial of the motion to compel arbitration because Southern United failed to establish that the sale of the insurance policy substantially affected interstate commerce.
MADDOX, Justice (dissenting).
On the question of the interstate nature of the transaction involved here, the majority states:
"The policy does state that the coverage territory extends beyond the borders of Alabama and that an insured automobile is protected against a loss occurring while it is being transported between ports in the coverage territory, which, according to the policy, includes the `United States, its territories or possessions, Puerto Rico, and Canada.'"
736 So.2d at 586. The majority then concludes that it "fail[s] to see how [Knight's] purchase of a personal automobile policy in Alabama from an Alabama insurance company had a substantial effect on interstate commerce." 736 So.2d at 586. I must respectfully disagree with this conclusion because I read the law differently.
I believe the question whether the business of providing insurance affects interstate commerce was answered by the Supreme Court in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). The Supreme Court, in Humana Inc. v. Forsyth, ___ U.S. ___, ___, 119 S.Ct. 710, 715-16, 142 L.Ed.2d 753 (1999), discussed the holding in South-Eastern, as follows:
"Prior to our decision in United States v. South-Eastern Underwriters Assn.,... we had consistently held that the business of insurance was not commerce. The business of insurance, in consequence, was largely immune from federal regulation. In South-Eastern, we held for the first time that an insurance company doing business across state lines engages in interstate commerce. In accord with that holding, we further decided that the Sherman Act applied to the business of insurance."
(Citations omitted.) Based upon the provisions found in this insurance policy, I believe that in issuing this policy the insurance company was engaging in interstate commerce and that the sale of the policy affected interstate commerce.
NOTES
[1] The arbitration provision in the application stated:

"The applicant understands that any and all disputes, disputed claims and controversies of any nature whatsoever between the applicant and the company, the company's agents (or persons or entities alleged to be its agents), employees, representatives and/or officers, whether such disputes, demands, disputed claims or controversies are based upon, relate to or arise out of this application or any policy of insurance issued to the applicant (including, but not limited to, any disputes pertaining to statements made before, during or after the applicant's execution of this application) shall be resolved by binding arbitration as more fully described in the policy of insurance."
The arbitration provision in the policy read as follows:
"Any and all disputes, disputed claims and controversies of any nature whatsoever between any insured and Southern United Fire Insurance Company, its agents (or persons or entities alleged to be its agents), employees, representatives, and/or officers, whether such disputes, demands, claims or controversies are based upon, relate to or arise out of this Policy (or the issuance or events leading up to the issuance of this Policy), any disputed claims submitted under this Policy, or to any event, statement, act, omission or condition which occurred or failed to occur prior to the issuance of this Policy or which occurs or fails to occur contemporaneously with the issuance of this Policy or which occurs or fails to occur at any time after this Policy is issued, will be submitted to binding arbitration. In addition, all questions, disputes and controversies of any nature whatsoever related to the enforceability, validity, scope of interpretation of this Policy or this arbitration clause shall be resolved by binding arbitration. Arbitration of all matters subject to this agreement shall be before a panel of three arbitrators, one of which shall be chosen by each party with a third being chosen by the two arbitrators selected by the parties. None of the arbitrators shall have a family or employment relationship with either of the parties or either of the other arbitrators. Each party will pay the fee of its own arbitrator and the fee of the third arbitrator will be split equally by the parties. Unless the parties agree otherwise, any arbitration proceeding conducted pursuant to this agreement shall be conducted in Mobile, Alabama. Any arbitration proceeding conducted pursuant to this contract shall be conducted pursuant to the rules and procedures selected by the panel of arbitrators, [with certain specified exceptions]."
(Emphasis omitted.)
[2] We note that we find Knight's fraud and unconscionability arguments unpersuasive. The arbitration provision in the application, which was conspicuously placed just above the line where Knight signed, referenced the arbitration provision that was later incorporated into Knight's policy. There is no evidence indicating that Knight is not a competent, literate adult. For all that appears in the record, Knight was capable of understanding what he was agreeing to if he had taken the time to read the document he was signing. By not exercising his contractual right to cancel the policy upon its receipt, Knight agreed to be bound by the policy's provisions, including the arbitration provision. See First Family Financial Services v. Rogers, 736 So.2d 553 (Ala.1999); Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala.1999); Ex parte McNaughton, 728 So.2d 592 (Ala.1998); Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998); Ex parte Rager, 712 So.2d 333 (Ala.1998).

We are also unpersuaded by the reasons given by the trial court for refusing to grant Southern United's motion to compel arbitration. The appraisal provision calls for a panel of appraisers (one selected by each of the parties and one selected by the appraisers if needed to resolve a deadlock) to resolve any dispute over the amount of a covered loss. Although the trial court is correct in noting that the arbitration provision is, on its face, broad enough to encompass such a dispute, the two provisions must be read together, if possible, so as to give each provision the sphere of operation intended by the parties. See Ryan Warranty Services, Inc. v. Welch, 694 So.2d 1271 (Ala.1997) (general rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists). There is no ambiguity in the policy. Clearly, the more dispute-specific appraisal provision should be read as applying when there is no dispute over coverage but there is a dispute as to the amount of a covered loss. Read this way, the appraisal provision limits the scope of the broad arbitration provision (i.e., it is merely an exception to the arbitration provision.)
Furthermore, the arbitration provision is not made unenforceable by the fact that there is no reference to the fees routinely charged by arbitrators. The parties agreed:
"Each party will pay the fee of its own arbitrator and the fee of the third arbitrator will be split equally by the parties.... Any arbitration proceeding conducted pursuant to this contract shall be conducted pursuant to the rules and procedures selected by the panel of arbitrators...."
There is no lack of mutual assent evidenced here. Knight agreed to pay arbitrators' fees, whatever those fees were. He did not agree to submit his claims to arbitration only if he could later agree with Southern United that he would have to pay a certain fee for arbitrator services. Therefore, there was no unenforceable agreement to agree, as the trial court concluded. Moreover, any hardship in paying the fees Knight agreed to pay would have had to be addressed by the arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or in accordance with other rules adopted by the arbitrators. See Universal Underwriters Life Ins. Co. v. Dutton, supra, citing Ex parte Dan Tucker Auto Sales, Inc., supra. The law does not favor the destruction of contracts on the ground of uncertainty. For a court to treat a contract as void on the ground of uncertainty, the contract must be so vague and indefinite in its terms that the intention of the parties cannot be fairly and reasonably inferred from them. Alabama National Life Ins. Co. v. National Union Life Ins. Co., 275 Ala. 28, 151 So.2d 762 (1963). That is not the case here.
[3] Congress may regulate three broad categories of activity under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) those activities having a substantial effect on interstate commerce. See United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). However, in this case, Southern United makes no allegations as to the use of the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce. Thus, in this case, the underlying transaction must substantially affect interstate commerce if it is to come within the commerce power. Id.
[4] If interstate characteristics had been demonstrated, such as an out-of-state insurance company or out-of-state policyholders, that, in the aggregate, could have a substantial effect on interstate commerce, then Southern United would have satisfied its burden. See United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 541, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (finding such characteristics to create "a continuous and indivisible stream of intercourse among the states composed of collections of premiums, payments of policy obligations, and the countless documents and communications which are essential to the negotiation and execution of policy contracts"); Woodmen of the World Life Ins. Soc'y v. White, 35 F.Supp.2d 1349 (M.D.Ala. 1999). The Supreme Court of the United States has commented:

"`The contracts of insurance may be said to be interdependent. They cannot be regarded singly, or isolatedly, and the effect of their relation is to create a fund of assurance and credit, the companies becoming the depositories of the money of the insured, possessing great power thereby and charged with great responsibility.'"
South-Eastern Underwriters Ass'n, 322 U.S. at 547 n. 26, 64 S.Ct. 1162 (quoting German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 414, 34 S.Ct. 612, 58 L.Ed. 1011 (1914)).
[5] See, e.g., Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995) ("[T]he respondents urge this Court to look beyond the record of this case. This we cannot do. This Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court.").