The defendants appeal from an order of the trial court denying their motion to compel arbitration. The defendants presented no evidence to the trial court indicating that the contract in this case involved interstate commerce; therefore, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1
et seq., does not apply, and § 8-1-41(3), Ala. Code 1975, prohibits the enforcement of the parties' predispute arbitration agreement. We therefore affirm.
 I.
Pamela Green, a resident of Alabama, purchased a used 1991 Ford Escort automobile from T.R. Motors in Opelika. Green signed a retail installment contract and security agreement (the "Contract") with T.R. Motors. It required her to make 24 monthly payments of $204.63 each, beginning June 1, 1998. She also signed an agreement to arbitrate future disputes relating to her purchase of the Escort. T.R. Motors assigned the Contract to Tefco Finance Company ("Tefco"), also of Opelika.[1]
Approximately one month after Green had purchased the Escort, it began to have mechanical problems. Green returned the Escort to T.R. Motors and asked Tefco to pay Adams and Williams Auto Center, Inc. ("AW"), to repair the Escort. On June 26, 1998, Green — according to Tefco — signed an agreement acknowledging that she had asked Tefco to pay AW for the repairs, and agreeing to repay Tefco by adding an additional $20 to each of her scheduled monthly payments. Thereafter, Green received from Tefco a statement that included the additional $20 charge.
Green sued Tefco, T.R. Motors, and AW, alleging fraud, fraudulent suppression, *Page 757 
breach of contract, and negligence, asserting that she had never agreed to increase her monthly payments. Tefco and T.R. Motors (the "defendants") moved to stay the judicial proceedings, to compel arbitration, and to transfer the case from Macon County to Lee County.[2]
In support of their motion, the defendants filed, among other things, a copy of the arbitration agreement and the affidavit of Herman E. Moore, the vice president of both T.R. Motors and Tefco. The arbitration agreement provides, in pertinent part:
 "In connection with the Customer(s) [sic] acquisition of the above described motor vehicle . . ., the Customer(s) and the Dealer mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of the contract(s) entered into by the parties of and concerning the within described motor vehicle, as follows: That the vehicle described within was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; has been traveling in interstate commerce; the manufacture, transportation, sale an[d] use thereof has been and will continue to be regulated by laws of the United States of America; and that the contract(s) entered into by the parties concerning said motor vehicle evidence transactions involving and affecting commerce. The undersigned agree that all disputes . . . resulting from or arising out of the sale transaction entered into, (including but not limited to: . . . the condition of the motor vehicle; the representations, promises, undertakings, warranties or covenants made by Dealer in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle; the terms of financing in connection therewith . . .); that Dealer and the purchaser(s) agree to submit such disputes to BINDING ARBITRATION. . . . THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY."
(Capitalization in original.) Moore's affidavit states, in pertinent part:
 "4. On May 1, 1998, the Plaintiff, Pamela Green, purchased a used 1991 Ford Escort from T.R. Motors in Opelika, Alabama and financed the purchase through Tefco, also of Opelika, Alabama. . . . The plaintiff took possession of the automobile in Opelika, Alabama. . . .
 "5. At the time of sale, the Plaintiff also executed several other documents, including an Alternative Dispute Resolution Agreement By Binding Arbitration wherein she agreed to arbitrate. . . .
". . . .
 "11. Neither Tefco nor T.R. Motors does or has ever done business in the past in Macon County, Alabama. The automobile was purchased by the Plaintiff in Lee County, Alabama. The financing papers with T.R. Motors which were assigned to Tefco were executed by the Plaintiff in Lee County, Alabama. All negotiations leading to the sales and finance transaction occurred in Lee County, Alabama. The Plaintiff took possession of the automobile in Lee County, Alabama. The Plaintiff had the automobile repaired and executed the Repair Agreement in favor of Tefco in Lee County, Alabama. All of Tefco's and T.R. Motors' business in the present transaction occurred exclusively in Lee County, Alabama. Neither Tefco nor *Page 758 
T.R. Motors has engaged or presently engages in any business in Macon County, Alabama with the Plaintiff or anyone else for that matter."
Green did not file a response to the defendants' motion. After conducting a hearing, the trial court denied the defendants' motion to compel arbitration, concluding that the "[d]efendants' business is [not] conducted in interstate commerce, which is a required showing before binding arbitration can take place."[3]
 II.
A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration. See Homes ofLegend, Inc. v. McCollough, 776 So.2d 741 (Ala. 2000). This Court reviews de novo a trial court's denial of a motion to compel arbitration.Id. at 742-43.
The defendants argue that the trial court erred in denying their motion to compel arbitration on the ground that their "business is [not] conducted in interstate commerce."[4] A "party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce." Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999). "In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260,1265 (Ala. 1995) (opinion on application for rehearing). The defendants argue that they have met their burden. We disagree.
The FAA provides:
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce
to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2 (emphasis added). "The [FAA] preempts contrary state law (specifically, contrary law based on Ala. Code 1975, § 8-1-41(3), and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that `involves' interstate commerce." Southern United FireIns. Co. v. Knight, 736 So.2d 582, 585-86 (Ala. 1999).
The defendants argue that we should apply the principles stated in the main opinion in Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala. 1997). In that case, a plurality of this Court (four Justices) expressed the view that an agreement for the sale of a used automobile is, per se, an agreement "involving [interstate] commerce," within the meaning of9 U.S.C. § 2. Hurst, which is factually similar to this case, involved "the sale in Alabama of a used motor vehicle to an Alabama resident, where the seller ha[d] its only place of business in Alabama, the vehicle [was] delivered to the buyer in Alabama, and all obligations arising out of the sales contract [were] to be performed in Alabama."Hurst, 699 So.2d at 1255. The plurality concluded that, although this kind of transaction "is not a transaction within the `flow' of interstate commerce," 699 So.2d at 1255, it does "involve" *Page 759 
interstate commerce. Id. at 1255-59. The plurality reasoned that "Congress, exercising its power to regulate interstate commerce, has specifically authorized federal agencies to regulate the sale of used motor vehicles," and therefore that "Congress has concluded that the sale of a used motor vehicle involves interstate commerce." Id. at 1256 (citations omitted).
However, most recently in Southern United Fire Insurance Co. v.Knight, 736 So.2d 582 (Ala. 1999), a majority of this Court rejected the notion of a per se rule for determining whether a transaction is one "involving [interstate] commerce." In Knight, an Alabama consumer sued his Alabama insurer on claims arising out of his purchase of a personal policy of automobile insurance. Id. at 586. The insurer moved to compel arbitration, based on two broad arbitration provisions in the insurance policy, arguing that "the policy . . . `involve[d]' interstate commerce because the policy's coverage territory included other states and because the policy applied to an accident or loss involving an insured automobile while it was being transported between ports within the coverage territory." Id. at 586. However, this Court concluded that the insurer's bare assertions that the insurance transaction involved interstate commerce simply because the policy provided for coverage if the insured traveled outside Alabama were insufficient to invoke the provisions of the Federal Arbitration Act. Id. Because the insurer did not meet its "burden of proving that [the insured's] purchase of the policy had a substantial effect on the generation of goods or services for an interstate market," we held that the FAA did not apply to that case. Id.
at 586-87. See also Sisters of the Visitation v. Cochran Plastering Co.,775 So.2d 759, 765 (Ala. 2000) (noting that the party who sought to compel arbitration "ha[d] the burden of proving that the transaction [out of which its claims arose] affected interstate commerce").
We must determine whether Tefco met its burden of proving that the "contract involves a transaction affecting interstate commerce." Ex parteCaver, 742 So.2d 168, 172 n. 4 (Ala. 1999). To meet this burden, a party must show that the effects the contract has on interstate commerce are substantial. Lopez, 514 U.S. at 558-59. In determining whether an economic transaction affects interstate commerce, the Supreme Court considers the aggregate effects the transaction has on interstate commerce. See United States v. Morrison, 529 U.S. 598, 627,120 S.Ct. 1740, 1759 (2000) (Souter, J., dissenting) (citing Wickard v. Filburn,317 U.S. 111, 124-28 (1942), and Hodel v. Virginia Surface Mining Reclamation Ass'n, 452 U.S. 264, 277 (1981)); see also Solid Waste Agencyof Northern Cook County v. United States Army Corps of Eng'rs,531 U.S. 159, 173-74, 121 S.Ct. 675, 683-84 (2001) (citing Morrison).[5]
We conclude that Tefco did not meet its burden, because it presented no evidence indicating how the aggregate effects of this intrastate purchase of a used automobile *Page 760 
affects interstate commerce. It is undisputed that the plaintiff is an Alabama resident, that the defendants are Alabama businesses, and that the entire transaction involving the sale and financing of the automobile occurred within Alabama. The defendants assert that the Escort was manufactured outside Alabama and that, by its very nature, it can be transported across state lines. However, the only evidence presented in support of their motion to compel arbitration was an affidavit expressly isolating the entire transaction within this state.[6] Nothing before the trial court indicated that Green had taken the Escort across state lines or that her purchase of the Escort had had any effect on interstate commerce. The defendants do not even allege that they have other customers who have traveled outside Alabama in an automobile the defendants have sold or financed, so as to show that the sale and financing of Green's automobile was part of a pattern of economic activities that in the aggregate affected interstate commerce. For this reason, we must conclude that the trial court properly held that the contract did not involve interstate commerce. Thus, § 8-1-4(3), Ala. Code 1975, applies. That section precludes enforcement of the arbitration agreement.
AFFIRMED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Green does not dispute that this assignment was an effective transfer of the arbitration agreement, as well as of the retail installment contract and the security agreement.
[2] AW did not join in the motion to compel arbitration and is not before this Court on appeal.
[3] The trial court did not rule on the defendants' motion to transfer the case.
[4] The parties do not dispute that Green signed the arbitration agreement and that their dispute falls within the scope of that agreement.
[5] In Morrison, the Supreme Court held:
 "Gender-motivated crimes of violence are not . . . economic activity. While we need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature."
529 U.S. at 613, 120 S.Ct. at 1751 (emphasis added) (citations omitted). Thus, this Court must consider the aggregate effect the sale and financing of this automobile had on interstate commerce.
[6] Statements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration. SeeFountain Fin., Inc. v. Hines, 788 So.2d 155, 159 (Ala. 2000).