American General Finance, Inc. ("AGF"), appeals from an order denying its motion to compel arbitration in an action brought against it by Jimmy D. Morton. The action sought compensatory and punitive damages for breach of contract, fraudulent suppression, and fraudulent misrepresentation, all arising out of Morton's purchase of a parcel of real estate from AGF. We affirm.
 Facts
On August 23, 1996, in conjunction with Morton's purchase of a parcel of real estate from AGF, and the financing of that purchase, Morton received a "Statutory Warranty Deed" from AGF, and he executed for its benefit a "Note and Security Agreement" and a "First Mortgage." All of these documents were executed as interrelated components of the same transaction, i.e., Morton's purchase of the property and AGF's financing of the purchase.
An arbitration clause contained in the "Note and Security Agreement" reads, in pertinent part:
 "Borrower(s) hereby acknowledge that the transactions evidenced by this agreement involve interstate commerce. Borrower(s) and Lender agree that, except as otherwise set forth in this provision, all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by arbitration including (i) those based on contract, tort, or statute, (ii) those arising out of or relating to the transaction(s) evidenced by this agreement, the disclosures relating to this agreement, the Federal Disclosure Statement, any insurance certificates of *Page 284 
policies, any documents executed at or about the same time this agreement was executed or (iii) those arising out of, or relating to any other prior proposed or actual loan or extension of credit (and the relationships which result from these transactions or any other previous transactions between Borrower(s) and Lender(s))."
After he purchased the real estate in 1996, Morton borrowed money from another company and with that money paid off his debt to AGF. When Morton attempted to record the satisfaction of the lien AGF had held, he was informed that the property had been sold in a tax auction, before he had purchased it, and that AGF thus had not owned the property when it purported to sell the property to him, but that he could reclaim the property by paying the back taxes. Morton contacted AGF about this problem, and AGF instructed him to return to its Gadsden office and pick up a check for the unpaid taxes. When Morton arrived at the Gadsden office, the manager refused to see him, and the manager did not respond to his calls in the following weeks. With the deadline to reclaim the property by paying the back taxes approaching, Morton again contacted the AGF office; one of the AGF employees instructed him to pay the taxes and promised that AGF would reimburse him. After Morton paid the taxes, AGF refused to reimburse him. This lawsuit followed.
Morton filed his complaint on August 24, 1998. AGF filed an answer on October 13, 1998, alleging that Morton was barred from suing, because of the arbitration clause. On December 7, 1999, AGF filed a motion to stay the proceedings and to compel arbitration. AGF attached to its motion (1) a copy of the "note and security agreement" that contained the arbitration clause quoted above; (2) an affidavit purporting to establish that the sale of the real estate had involved interstate commerce, (3) orders from seven other cases in Alabama where AGF's arbitration agreements had been enforced by trial courts; and (4) a copy of AmericanGeneral Finance v. Manley, 729 So.2d 260 (Ala. 1998), which is based onEx parte McNaughton, 728 So.2d 592 (Ala. 1998). This Court's decision inMcNaughton does not contain any analysis of the requirement imposed by the Federal Arbitration Act ("FAA") that, to be subject to the FAA, an arbitration agreement must appear in a contract evidencing a "transaction involving interstate commerce." McNaughton addresses only the doctrines of mutuality of remedy and unconscionability as defenses to the enforcement of an arbitration agreement. The trial court denied the motion to compel arbitration, on June 7, 2000, finding, in pertinent part:
 "[T]here is no evidence before the [c]ourt of how a sale of Blount County, Alabama land by a company in Gadsden to a man from Oneonta, Alabama, involves interstate commerce.
". . . .
 "[T]here is no doubt that the arbitration clause is broad enough to encompass not only the note and security agreement but also the documents that were executed as part of the same transaction, i.e., the deed and mortgage. . . ."
The sole issue before us is whether the trial court erred in denying AGF's motion to compel arbitration.
 Standard of Review
This Court reviews the denial of a motion to compel arbitration de novo. Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999);Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract *Page 285 
evidences a transaction substantially affecting interstate commerce. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999); Sisters of the Visitation v. Cochran, 775 So.2d 759 (Ala. 2000). "[A]fter a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (opinion on application for rehearing) (Ala. 1995).
At the outset, we note that the trial court's finding that the arbitration agreement was broad enough to encompass all of the documents in Morton's purchase and financing transaction with AGF is supported by the evidence. In the context of arbitration litigation, this Court has held that "`two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together.'" Quality Truck Auto Sales, Inc.v. Yassine, 730 So.2d 1164, 1170 n. 8 (Ala. 1999) (quoting with approvalHaddox v. First Alabama Bank of Montgomery, N.A., 449 So.2d 1226, 1229
(Ala. 1984)). See also Reynolds Reynolds v. King Autos., Inc.,689 So.2d 1, 3 (Ala. 1996) (documents must be considered together in determining the effect of an arbitration agreement contained in one of them, where they "arose from the negotiations to make a single purchase" and arose "from the same single transaction," despite arguments by the party opposing arbitration that "its claims were based solely on [a document] which did not contain an arbitration clause" and that that document "is the actual contract now at issue, and, thus, that the claims are not subject to the arbitration clause contained in the [other document]"). Moreover, Morton has not contested the trial court's finding that the arbitration agreement encompasses all of the transaction documents, and that finding is now the "law of the case." BIC Corp. v.Bean, 669 So.2d 840 (Ala. 1995); Griner Drilling Serv., Inc. v. Jenkins,497 So.2d 187 (Ala.Civ.App. 1986). We conclude that the transaction in this case includes a contract calling for arbitration, so that the first requirement of TranSouth has been met.
We next consider the second element of TranSouth, as recently discussed in Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala. 1997), andSisters of the Visitation, supra, as it applies to the question whether AGF met its burden of proving that the transaction "involved" interstate commerce, as that term is used in the FAA.
The FAA provides:
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.
 "The [FAA], 9 U.S.C. § 1 et seq., preempts contrary state law (specifically, contrary law based on Ala. Code 1975, § 8-1-41(3) and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that `involves' interstate commerce."
Southern United Fire Ins. Co. v. Knight, 736 So.2d 582, 585-86 (Ala. 1999), citing Jim Burke Auto., Inc. v. Beavers, supra; Lopez v. HomeBuyers Warranty Corp., 670 So.2d 35 (Ala. 1995). *Page 286 
In Hurst v. Tony Moore Imports, Inc., supra, this Court discussed "involvement" with interstate commerce:
 "[I]n Allied-Bruce Terminix Cos. v. Dobson, [513 U.S. 265
(1995)], the Supreme Court made it very clear that the words `involving commerce,' as used in § 2 of the FAA, are much broader than the often-found words of art `in commerce' and that they cover activities within the `flow' of interstate commerce as well as activities that merely have an effect on interstate commerce. Citing United States v. American Building Maintenance Industries, 422 U.S. 271, 276, 95 S.Ct. 2150, 2154, 45 L.Ed.2d 177 (1975), quoting Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974), the Court in Allied-Bruce Terminix defined `flow' to include `the generation of goods and services for interstate markets and their transport and distribution to the consumer.'
". . . .
 "Based on Allied-Bruce Terminix and American Building Maintenance, we reaffirm Ex parte Williams[, 555 So.2d 146
(Ala. 1989),] and Ex parte Warren[, 548 So.2d 157
(Ala. 1989), cert. denied, Jim Skinner Ford, Inc. v. Warren, 493 U.S. 998 (1989),] to the extent they stand for the proposition that, standing alone, the sale in Alabama of a used motor vehicle to an Alabama resident, where the seller has its only place of business in Alabama, the vehicle is delivered to the buyer in Alabama, and all obligations arising out of the sales contract are to be performed in Alabama, is not a transaction within the `flow' of interstate commerce."
699 So.2d at 1253-55 (emphasis added; footnote omitted). Similarly, we conclude that the sale of real property in Alabama to an Alabama resident by an Alabama company, where "all the obligations arising out of the sales contract are to be performed in Alabama," is not a transaction within the flow of interstate commerce. However, to continue the analogy to Hurst, we must also consider whether Morton's purchase of the property has, under the test of Sisters, supra, a "substantial effect" on interstate commerce. The trial court relied upon Sisters in concluding that the transaction had no substantial effect on interstate commerce.
In Sisters, an order of Catholic nuns entered into a contract with Cochran, an Alabama company, to repair cracks in the plaster and walls of its chapel, to cast and install plaster moldings, and to pin up all loose moldings with screws and washers. The contract included an arbitration provision, which the Sisters invoked to demand arbitration of their claims that Cochran had negligently damaged decorative paintings in the chapel and had not completed its work. Cochran filed an action in the circuit court seeking an injunction to stop the arbitration proceeding, because, it argued, enforcement of the arbitration provision was barred by §8-1-41(3), Ala. Code 1975, because the contract did not involve interstate commerce and the FAA therefore did not preempt enforcement of § 8-1-41(3). In addressing the issue whether the FAA, 9 U.S.C. § 1
et seq., was controlling, this Court discussed the requirements set out by the United States Supreme Court in Allied-Bruce Terminix Cos. v.Dobson, 513 U.S. 265 (1995), concerning "involvement" with interstate commerce, from the standpoint of a transaction's effect on interstate commerce.
After discussing the relevant decisions from that Court concerning what constitutes an effect on interstate commerce *Page 287 
sufficient to bring a transaction under the FAA, we concluded that the proponent of the arbitration clause was required to show that the transaction had a "substantial effect" on interstate commerce.United States v. Lopez, 514 U.S. 549, 559 (1995). We listed factors a court should examine when determining if a transaction has had a substantial effect on interstate commerce. The factors include: (1) citizenship of the parties and any affiliation they might have with out-of-state entities; (2) where the tools and equipment originated; (3) allocation of costs and services; (4) subsequent movement across state lines; and (5) degree of separability from other contracts. We analyzed the contract in Sisters under those factors, and we determined that the Sisters and Cochran were both Alabama residents and that the only affiliation either of them had with out-of-state entities was the relationship between the Sisters and the Roman Catholic Church. The Court indicated that it would not view that relationship as commercial activity with an effect on interstate commerce, and it concluded that the contract was between two local parties, each unaffiliated with an entity involved in interstate commerce. In light of those facts, and after considering the other factors set out in Sisters, we held that the contract did not have a substantial effect on interstate commerce. The arbitration clause was therefore unenforceable.
Although the factors in Sisters are not a perfect fit for a transaction of the kind involved in the present case, a consideration of those factors does supply some guidance. We begin our analysis by reviewing the evidence that was before the trial court on June 2, 2000, when it entered its "Order Denying Motion To Compel Arbitration." It consisted of the three transaction documents and the affidavit of Thomas L. Edgeworth, which states in its entirety:
 "COMES NOW affiant, Thomas L. Edgeworth, who after being duly sworn under oath, deposes and states that the following facts are within his personal knowledge, and that if called as a witness he could testify competently thereto:
 "1. I am presently a Vice-President and Director of Operations for American General Finance, Inc. (`AGF'), an Alabama corporation headquartered in Evansville, Indiana. I have held this position since January 1, 1997. Prior to that date I served as District Manager for AGF. I have read the complaint filed in this case, and I am familiar with the loan involved in this lawsuit.
 "2. I am also familiar with the general business practices of AGF, particularly those that are transacted in interstate commerce.
 "3. Additionally, the money which AGF provides as loans to its customers is made available to AGF through an affiliated corporation, American General Finance Corporation (`AGFC'), an Indiana corporation also headquartered in Indiana. The money is sent to AGF across state lines from AGFC's bank account located outside Alabama, and when payments are made by customers to AGF, those funds are ultimately sent out of state to AGFC's bank accounts as repayment of the funds previously furnished to AGF.
"FURTHER AFFIANT SAYETH NOT."
This affidavit indicates that AGF has some degree of connection with an affiliated corporation, AGFC, in Indiana. The affidavit does not indicate how AGFC supplies money to AGF, i.e., it does not show whether such funding is by way of periodic general business investments or is supplied *Page 288 
according to specific transactions. The affidavit simply states that the money AGF lent Morton came to it from outside Alabama, from AGFC's bank account, and that the money AGF receives by way of payments from customers such as Morton is "ultimately" sent out of state to AGFC's bank accounts, as repayment of the funds previously furnished AGF by AGFC. Whether those payments are accumulated and held by AGF in a general aggregated account or are remitted as individual payments per customer, we are not told. We are not told how long it is before the payments received by AGF from its customers are "ultimately" sent by it in some form to AGFC. Those payments may well "come to rest" in the account(s) of AGF and be remitted in some fashion to AGFC only after the passage of weeks or months.
Nothing else was presented by AGF to show an effect on interstate commerce. The "Note and Security Agreement" containing the arbitration clause identifies the "Payee (Lender)" as "American General Finance, Inc., 131 N. 4th Street, Gadsden, AL 35901."
The factors this Court used in Sisters for determining whether the transaction in that case had a substantial effect on interstate commerce included (1) the citizenship of the parties, i.e., whether the parties were affiliated with other entities outside the state, (2) the source of the tools and equipment used in the transaction, (3) the allocation of the costs of services and materials used in the transaction, (4) subsequent movement across state lines, and (5) the degree of separability from other contracts. 775 So.2d at 765-66. Although the affidavit in the instant case states that AGF is affiliated with AGFC, we are not supplied with any specific information concerning the nature of the affiliation, other than that set forth in Edgeworth's affidavit. With respect to the other factors used in Sisters, we note that AGF made no showing that the facilities used in the transaction are connected with interstate commerce, or that any of the allocable costs involved in the transaction relate to interstate labor, materials, or overhead. Further, AGF made no showing that any other contract involving interstate commerce is related to Morton's purchase of the Alabama real property from AGF or to AGF's financing of that purchase. Of course, the real estate is, by its nature, intrastate and incapable of movement in interstate commerce.
We contrast this situation with the situation in Thompson v. SkipperReal Estate Co., 729 So.2d 287, 290 (Ala. 1999). In that case, the Court considered the enforceability of an arbitration agreement in a real estate sale where the record indicated that the Thompsons' real estate contract with George Skipper was intrastate in nature. However, the Thompsons obtained their financing from a corporation operating out of Arizona (which later assigned the note and mortgage to a corporation operating out of Florida); they obtained their title insurance from a California corporation; and they obtained their homeowner's insurance from a corporation operating out of Ohio. Skipper predated the "substantial effect" test in Sisters, and we concluded that under the "any tangible effect" test, the real estate sales transaction between the Thompsons and Skipper had a sufficient nexus with interstate commerce to invoke the provisions of the FAA. Thus, this Court determined that the connections to interstate commerce in Skipper, much more extensive that the connections in the instant case, were sufficient to reach the requisite level of involvement with interstate commerce. Similarly, inLopez v. Home Buyers Warranty Corp., supra, this Court held that the FAA applied to a home-buyer's warranty that had been transferred to the buyers in a *Page 289 
Montgomery real estate transaction. This Court specifically noted inLopez that not only had the warranty been issued by Home Buyers Warranty Corporation from its office in Denver, Colorado, but also the house had a Veterans' Administration loan guaranty and the title insurance had been procured through a California company. The nexus between the transaction and interstate commerce in the present case is considerably more tenuous than the nexus in Skipper or in Lopez, both with regard to the extent to which the transaction involved commerce and with regard to the specific nature of the involvement.
Another case we find instructive is Tefco Finance Co. v. Green,793 So.2d 755 (Ala. 2001). In Tefco, Pamela Green bought a used car from an Alabama automobile dealer. A dispute arose over payments, and Green sued the dealership, alleging fraud and breach of contract. The dealership made a motion to compel arbitration and offered the arbitration agreement and an affidavit in support thereof. The affidavit contained facts that appeared to isolate the transaction within the State of Alabama. The dealership argued that the car was manufactured outside Alabama and that, by its very nature, it could be transported across state lines. The trial court denied the motion to compel arbitration, and this Court affirmed. We concluded that the affidavit offered by the dealership did not contain sufficient evidence of an effect on interstate commerce. We went on to hold that the contract for the sale of the used car to Green in Alabama, which car was manufactured outside Alabama and was capable of traveling outside the state, did not per se involve interstate commerce and, therefore, that the arbitration clause was unenforceable.
In Southern United Fire Insurance Co. v. Knight, 736 So.2d 582 (Ala. 1999), this Court examined a fact situation very similar to the fact situation in this case. In that case, Knight, a resident of Alabama, bought an insurance policy from Southern United, which had an office in Alabama. We recognized that:
 "insurance transactions that stretch across state lines or intrastate insurance transactions that otherwise have the requisite (substantial) effect on interstate commerce constitute `Commerce among the several States,' so as to make them subject to regulation by Congress under the Commerce Clause of the United States Constitution."
736 So.2d at 586. The policy issued by Southern United was issued out of Mobile. Southern United argued that the coverage area of the policy included the United States, Puerto Rico, and Mexico, and, therefore, that the transaction involved interstate commerce. This Court rejected that argument, concluding that even if the automobile covered by the insurance policy traveled out of state, the transaction would still not have a substantial effect on interstate commerce. We concluded that the only conceivable connection between the insurance transaction and interstate commerce was that the transaction was one of many such transactions that helped fund Southern United's business, enabling it to issue other policies that substantially affect interstate commerce. However, based on the record and the evidence in Knight, we refused to hold such a tenuous connection sufficient to invoke the FAA under Lopez, supra.
The evidence in this case indicates that AGF is a company with an office in Gadsden, Alabama, where the real estate involved in this transaction is also located; that all of Morton's dealings with AGF, including making all of his payments, have been with the AGF office in Gadsden; and that the only possible interstate connection any of the parties have is that of AGF with *Page 290 
AGFC. The evidence submitted by AGF fails to show any "substantial effect" that this particular transaction had on interstate commerce. In light of the evidence submitted on the motion to compel, we conclude that any possible connection Morton's contract with AGF might have to interstate commerce is as tenuous as the connections in Tefco
and Southern United, where this Court failed to recognize a "substantial effect" on interstate commerce.
 Conclusion
We conclude that AGF failed to meet its burden of showing that this real estate transaction had a "substantial effect" on interstate commerce, as that term is interpreted in Sisters of the Visitation,supra. The trial court's order denying the motion to compel arbitration is therefore affirmed.
AFFIRMED.
Brown and Stuart, JJ., concur.
Moore, C.J., and See, J., concur in the result.