Flora Ephraim sued her former employer, Tenet Healthcare Corporation, alleging a retaliatory discharge. See § 25-5-11.1, Ala. Code 1975. The defendant moved for an order compelling Ephraim to arbitrate her claim. The circuit court granted the motion. Ephraim petitions for a writ of mandamus directing the circuit court to vacate its order compelling arbitration.
 I.
Ephraim alleges that on March 20, 1997, while she was working in the Transportation Department at Brookwood Medical Center, she suffered an on-the-job injury while lifting wet linens. Ephraim filed a workers' compensation claim against Tenet Healthcare Corporation (hereinafter "Tenet"), the corporation that owned Brookwood Medical Center. Ephraim underwent back surgery on June 5, 1999. According to Ephraim, Tenet refused to reimburse her for medical expenses related to the surgery and refused to pay her weekly benefits while she recovered from the surgery. She claims that when her physician released her to return to work, Tenet refused to reinstate her.
On April 1, 1996, Ephraim had received an Employee Handbook while attending a presentation at Brookwood Medical Center. Tenet drafted the Handbook, which sets forth Tenet's personnel policies and each employee's privileges and obligations. Ephraim signed an "Employee Acknowledgment Form," acknowledging that she had received of a copy of the Handbook. The Employee Acknowledgment Form reads, in pertinent part:
 "I acknowledge that I have received a copy of the Tenet Employees Handbook and Standards of Conduct and that I understand that they contain important information about the company's general personnel policies and about my privileges and obligations as an employee. I further understand and acknowledge that I am governed by the contents of the Employee Handbook and Standards of Conduct and that I am expected to read, understand, familiarize myself with and comply with the policies contained in them.
". . . .
 "In addition, I acknowledge that I have received a copy of the Tenet Fair *Page 354 
Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forgo any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association.
 "I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a writing signed by both me and the Company."
(Emphasis added.) As the fifth step in Tenet's "Fair Treatment Process," an employee has "the right to submit the problem or dispute to final and binding arbitration." (Employee Handbook at 68.)
On April 4, 2000, Ephraim sued Tenet, alleging that she had been wrongfully discharged in retaliation for filing a workers' compensation claim for her March 20, 1997, injury. See § 25-5-11.1, Ala. Code 1975. On September 8, 2000, Tenet filed a motion to dismiss or, in the alternative, to compel arbitration, based on the arbitration agreement contained in the Employee Acknowledgment Form.
On September 20, 2000, Ephraim objected to arbitration, claiming (1) that she had not agreed to arbitrate her claims against Tenet; (2) that her employment contract with Tenet did not substantially affect interstate commerce; (3) that the Employee Acknowledgment Form "contains no written provision in a contract involving commerce" and is therefore not covered by the Federal Arbitration Act; (4) that the Employee Acknowledgment Form is unenforceable because, she says, it is not supported by consideration; and (5) that she had not voluntarily, knowingly, and intelligently waived her federal and state constitutional right to a jury trial. In support of her argument, Ephraim filed an affidavit on September 22, 2000, in which she claimed that when she signed the Employee Acknowledgment Form, on April 1, 1996, she believed that she "was simply acknowledging receipt of the handbook." She further asserted that, when Tenet distributed the handbook, there was no discussion of its contents and no mention of arbitration.
On September 29, 2000, the trial court overruled Tenet's motion to dismiss. However, the trial court granted Tenet's motion to compel arbitration in accordance *Page 355 
with the arbitration provisions in the Employee Acknowledgment Form.
On October 11, 2000, Ephraim moved the trial court for a reconsideration, which the trial court granted. On October 27, 2000, the trial court held a hearing on Tenet's motion to compel arbitration. In a November 3, 2000 order, the trial court again granted Tenet's motion to compel arbitration, stating, in pertinent part:
 "This Court, relying upon Beasley v. Brookwood Medical Center, 712 So.2d 338 [(Ala. 1998)], grants the Motion to Compel Arbitration. The arbitration agreement in this case is identical to the arbitration agreement contained in the Beasley case. The Court notes that the Defendant in the Beasley case, Brookwood Medical Center, is now Tenet Healthcare Corporation. The Court in granting the Writ of Mandamus in Beasley stated it did so because the employee did not sign the arbitration agreement. In Beasley, however, Justice See stated that had the employee signed the employee acknowledgment form it would have created a binding obligation to arbitrate. In the instant case the employee signed the employee acknowledgment form and, therefore, a binding obligation to arbitrate was created."
Ephraim petitions for a writ of mandamus directing the trial court to vacate its order compelling the arbitration of her retaliatory-discharge claim against Tenet.
 II.
"A writ of mandamus is an extraordinary remedy, requiring the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte Beasley, 712 So.2d 338, 339
(Ala. 1998). A petition for the writ of mandamus is the generally accepted method for obtaining review when the trial court grants a motion to compel arbitration. Ex parte Alexander, 558 So.2d 364, 365 (Ala. 1990). (But see Rule 4(d), Ala.R.App.P., as amended by order dated May 10, 2001. That amendment, to be effective October 1, 2001, makes "[a]n order granting or denying a motion to compel arbitration" reviewable by appeal.)
Ephraim argues that the trial court erred in compelling her to arbitrate her retaliatory-discharge claim against Tenet because, she says, Tenet produced no evidence demonstrating that its employment contract with Ephraim substantially affected interstate commerce — without a substantial effect on interstate commerce, she says, the arbitration agreement is not enforceable under the Federal Arbitration Act ("FAA").[1]
The FAA provides: *Page 356 
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. (emphasis added). "The [FAA] preempts contrary state law (specifically, contrary law based on Ala. Code 1975, § 8-1-41(3) and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that `involves' interstate commerce." Southern United FireIns. Co. v. Knight, 736 So.2d 582, 585-86 (Ala. 1999); see Tefco Fin.Co. v. Green, 793 So.2d 755 (Ala. 2001).
"A `party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce.'" TefcoFin. Co. v. Green, 792 So.2d at 758 (quoting Ex parte Caver, 742 So.2d 168,172 n. 4 (Ala. 1999)). "`[T]o prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim.'" Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260,1265 (Ala. 1995) (opinion on application for rehearing) (quoting In reAmerican Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan. 1994)).
To meet this burden, a party must show that the effects the contract has on interstate commerce are substantial. United States v. Lopez,514 U.S. 549, 558-59 (1995). In determining whether an economic transaction substantially affects interstate commerce, the Supreme Court considers the aggregate effects of the transaction on interstate commerce. See United States v. Morrison, 529 U.S. 598, 628 (2000) (Souter, J., dissenting) (citing Wickard v. Filburn, 317 U.S. 111, 124-28
(1942), and Hodel v. Virginia Surface Mining Reclamation Ass'n,452 U.S. 264, 277 (1981)); see also Solid Waste Agency of Northern CookCounty v. United States Army Corps of Eng'rs, 531 U.S. 159, 173-74,121 S.Ct. 675, 683-84 (2001) (citing Morrison); Tefco, 793 So.2d at 759-60.
Tenet argues that it has met its burden. In support of its contention that the employment contract between Tenet and Ephraim substantially affected interstate commerce, Tenet has submitted the affidavit of Patsy Adams, the "human resources coordinator" for Brookwood Medical Center. Her affidavit states, in pertinent part:
 "3. Tenet Healthcare Corporation is the parent corporation of Brookwood Medical Center. Tenet Healthcare Corporation is headquartered in Santa Barbara, California and has its principal place of business in California. Tenet owns and operates 120 hospitals in many . . . states including California, Arizona, Arkansas, South Carolina, Georgia, Tennessee, Florida, Alabama, Mississippi, Louisiana, Missouri, Indiana, and Texas.
 "4. At all times involved in this case, Brookwood Medical Center and Tenet have been engaged in interstate commerce. Brookwood is located within a few miles of three interstate highways, and routinely treats out-of-state patients, as well as patients from foreign countries. Further, medical costs of many of Brookwood's patients are paid through out-of-state and multi-state insurance carriers and employment plans.
 "5. Plaintiff, Flora Ephraim, is a resident of the State of Alabama and *Page 357 
worked for Brookwood from 1975 to 1999.
 "6. In March of 1997, Ms. Ephraim alleges that she was injured on-the-job when she attempted to pick up a wet bag of linens.
 "7. At the time of her alleged injury, Ms. Ephraim worked in the Transportation Department as a transporter.
 "8. I am personally familiar with Ms. Ephraim's work and activities, which included transporting patients. Ms. Ephraim's work activities facilitated and affected Brookwood's business activities, including its interstate activities and patient care. As a Brookwood employee, Ms. Ephraim was covered by various federal laws and regulations, including Title VII of the 1964 Civil Rights Act, the Americans with Disabilities Act, the Fair Labor Standards Act and other laws which cover employers who are engaged in interstate commerce or an industry affecting interstate commerce.
 "9. Brookwood Hospital treats and cares for patients from several states throughout the United States and from several foreign countries. Ms. Ephraim was responsible for transporting these patients. Following their treatment at Brookwood, these out-of-state patients travel back to their homes outside of Alabama.
 "10. Tenet Healthcare paid Ms. Ephraim to transport patients, including patients from states other than Alabama.
 "11. In addition, Brookwood regularly purchases and receives goods and services from numerous out-of-state vendors and Ms. Ephraim regularly used these goods in her job.
". . . .
 "18. Tenet Healthcare Corporation has distributed this Employee Handbook to its employees throughout the United States."
According to Tenet, then, it is engaged in "commerce" within the meaning of the FAA, based on its treating out-of-state patients, receiving reimbursements from out-of-state or multi-state insurance carriers, and regularly receiving goods and services from out-of-state vendors. (Respondent's Brief at 8.)
The materials before us, however, give no indication that Adams's affidavit was presented to the trial court before it ruled on Tenet's motion to compel arbitration. Adams's affidavit, which is included in the materials Tenet submitted to this Court in response to Ephraim's mandamus petition, was signed and dated January 9, 2001. The trial court had granted Tenet's motion to compel arbitration on September 29, 2000. On October 11, 2000, Ephraim had moved the trial court for a reconsideration, which the trial court granted. On October 27, 2000, the trial court had held a hearing on Tenet's motion to compel arbitration, and had again granted that motion on November 3, 2000. Ephraim's petition for mandamus relief was filed on January 9, 2001 — the same day Adams's affidavit was signed and notarized. Therefore, the trial court, when granting Tenet's motion to compel arbitration, could not have considered this affidavit, which was executed over three months later. This Court does not review evidence presented for the first time on appeal. See Ryan's Family Steak Houses, Inc., v. Regelin, 735 So.2d 454,457 n. 1 (Ala. 1999) ("[T]he propriety of a ruling on a motion to compel arbitration, like the propriety of a ruling on a summary-judgment motion, must be tested by reviewing the pleadings and the evidence the trial court had before it when it ruled."). Accordingly, it appears from the record that, when it moved to compel arbitration, Tenet did not meet its burden of demonstrating that its employment contract with Ephraim had such an effect on interstate *Page 358 
commerce that the FAA mandated arbitration of Ephraim's wrongful-discharge claim. The trial court, therefore, erred in compelling arbitration of Ephraim's claim.
Tenet asserts that this Court's decision in Ex parte Beasley,712 So.2d 338 (Ala. 1998), requires the arbitration of Ephraim's claim because Ephraim signed the Employee Acknowledgment Form and that form contained an arbitration provision. In Beasley, a case involving the same defendant and identical Employee Handbook provisions, the plaintiff signed an acknowledgment form upon receiving a copy of the revised Employee Handbook; the acknowledgment form did not contain an arbitration clause. 712 So.2d at 341. This Court held that, absent the plaintiff's signature on a document that contains a valid arbitration clause, she could not be held to have agreed to arbitrate her employment-related claims against Brookwood. Id. Although Tenet correctly emphasizes that Ephraim signed an acknowledgment form that contained an arbitration provision, its reliance on Beasley is nevertheless misplaced, because the interstate-commerce issue was not raised by the parties in Beasley. Therefore, this Court's holding in Beasley does not speak to a situation in which, as in this case, the party moving to compel arbitration has failed to demonstrate that the contract at issue substantially affected interstate commerce.
Because Tenet did not present the trial court any evidence indicating that its employment contract with Ephraim substantially affected interstate commerce, the court should not have granted its motion to compel arbitration of Ephraim's wrongful-termination claim. Accordingly, we grant Ephraim's petition and issue a writ of mandamus directing the trial court to vacate its order granting Tenet's motion to compel arbitration.
PETITION GRANTED; WRIT ISSUED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Ephraim also argues that the trial court should not have compelled arbitration in this case because, she says, (1) the Employee Acknowledgment Form is unenforceable because it is not supported by consideration; (2) she did not voluntarily, knowingly, and intelligently waive her federal and state constitutional rights to a jury trial; (3) she was unaware of the arbitration clause contained in the Employment Acknowledgment Form; (4) she did not agree to arbitrate her claims against Tenet; (5) the arbitration agreement in the Employee Handbook excludes workers' compensation claims; and (6) the FAA does not apply to employment contracts like the one at issue in this case. However, because we agree with Ephraim that Tenet did not demonstrate that the employment contract in this case substantially affects interstate commerce — a requirement for making the arbitration provision enforceable under the FAA — we do not address these additional arguments in support of her mandamus petition.